Stewart v. Powell.

90  511
93  66

CASE 81—PETITION EQUITY—OCTOBER 9.

## Stewart v. Powell.

APPEAL FROM WEBSTER CIRCUIT COURT.

THE WILL OF A TESTATOR WAS REVOKED BY HIS SUBSEQUENT MARRIAGE, although at the time of the execution of the will he also executed an antenuptial contract, giving to his wife certain property, and expressed in his will the desire that the contract should be carried out. The effect of the subsequent marriage upon the will was the same as if there had been no contract.

W. L. GORDON, CLIFTON J. PRATT FOR APPELLANT.

Section 9 of chapter 113, General Statutes, does not apply. Where there is executed simultaneously with the will an antenuptial contract fixing the property rights of the parties, as in this case, the reason for the statute ceases to exist. (Stewart v. Mulholland, 88 Ky., 88; McAnnulty v. McAnnulty, 120 Ill., 26; Osgood v. Bliss, 141 Mass., 474.)

YEAMAN & LOCKETT FOR APPELLEE.

The statute was not enacted with the design to prevent fraud on marital

rights, but to prevent litigation over the question of intent on the part of the testator as to whether the will should be revoked by the marriage. (Jarman on Wills, vol. 1, p. 281, 5 Am. ed.)

The exception does not throw any doubt upon the purpose of the statute. *Expressio unius est exclusio alterius* is a maxim peculiarly applicable to the construction of statutes. (Brown's Legal Maxims, p. 664, 8th ed.; Bishop on Criminal Law, vol. 1, sec. 275.)

The facts in this case and in the case of Stewart v. Mulholland, 88 Ky., 38, are not the same, nor are they in the controlling points analogous.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

James Stull, of Webster county, married a Mrs. Buckley, and, prior to the marriage, entered into a contract fixing the right of property by reason of the marital relation. He gave to her a tract of land and some personal property during life, and at her death he directed by a will, written at the same time, that the property should pass to one of his daughters, Mrs. Stewart, then Lilly Stull. The marriage was consummated in some four or five months after the contract had been entered into, but afterwards annulled by the decree of the chancellor, in which a divorce was granted. In the execution of the will, or as a part of its contents, he expressed the wish that the contract should be carried out and *observed;* but that contract, by a court of competent jurisdiction, has been canceled, and the parties left as if the marriage relation had never existed. The will was offered for probate and rejected in the circuit court, on the ground that the marriage revoked it. The statute provides: "Every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appointment when the estate thereby appointed would not,

Stewart v. Powell.

in default of such appointment, pass to his or her heir, personal representative or next of kin." (Gen. Stats., chap. 113, sec. 9.)

In this case the will and the antenuptial contract were both executed long before the parties became man and wife, nor did the will in any manner affect the rights of Mrs. Buckley under the antenuptial agreement, and the case stands as if the will had been executed prior to the marriage and in the absence of any contract whatever. The case of Stewart v. Mulholland, reported in 88 Ky., 38, was the will of a woman made at the time of the marriage under an agreement with her husband that it should be made, and while the antenuptial contract, the will and the marriage were all executed on different days, they were so near each other, and each directly relating to the same matter, that this court held them to be simultaneous transactions. It was the wife's estate disposed of by the consent of her husband, and in the execution of a power conferred on her by that agreement. In fact, the property should be regarded as her separate estate under such circumstances.

This court referred to Osgood v. Bliss, 141 Mass., 474, and to the will of Ward, 70 Wis., 251, under statutes similar to the statutes of this State, where the will of the married woman was sustained. We find no ruling to the contrary. The wife, when laboring under the disability of coverture, has no power to make a will, while the husband may at all times, if competent to do so, dispose of his property by will, subject to the right of his wife to such part of his estate as the law gives her at his death; but as to the wife, she is

powerless, unless in the exercise of some power conferred on her, or in the disposition of her separate estate, which, although general estate before the marriage, may become separate estate by reason of an antenuptial contract, giving to the wife the power to dispose of it as if she were a *feme sole.*

In Stewart v. Mulholland, the court was discussing the powers of a married woman to make a will, and did not adjudge in that case that the will was executed before the marriage, but in effect held that it was simultaneous with the marriage, and made in pursuance of the contract made by husband and wife, by which the power to devise was given.

The language in the opinion of Stewart v. Mulholland to the effect "the marital rights having been settled by their agreement, and no one else being interested, directly or indirectly, but the husband, why should it be revoked?" was applied to the case then before us where the *feme* was empowered to make a will that, by the contract, conferred on her the power to dispose of it as her separate property. In our opinion the marriage in this case revoked the will, and the judgment rejecting the paper as the last will of James Stull is affirmed.