## Noel v. Noel.

(Decided October 28, 1930.)

LESLIE W. MORRIS for appellant.

POLK SOUTH, JR., for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This is a partititon proceeding instituted by John C. Noel against his brother R. W. Noel. The two brothers jointly owned two farms located in Franklin and Scott counties. One of the farms, known as the Pepper place, contained 804.4 acres, and was owned three-fourths by John C. Noel and one-fourth by R. W. Noel. The other farm, known as the Woods place, contained 527.25 acres, and was owned in equal parts by the parties. By an agreed order, Ray Brown, Bedford Macklin, and Garret Jones were chosen as commissioners to view the two farms and to fix their values separately and comparatively. They were directed to make a partition between the parties as nearly equal as possible, fixing any difference in value in money, so that both parties would have in land, or in land and money, a fair and equitable apportionment of their respective interests in the joint property. See "Owelty," 20 R. C. L. p. 736; 47 C. J. sec. 518, p. 477, and sec. 28, p. 276. The

760

commissioners were directed to take an oath faithfully and impartially to discharge their duties, and to make a report as early as practicable. They were further directed that regard should be had, in fixing the values of the two farms, individually and comparatively, to the location, quality, and condition of the soil and improvements, including the dwellings, barns, and homes, water, and every feature that established value. Each party reserved the right to except to the report of the commissioners only as to the values found by them. The Commissioners made a report whereby they fixed a value of $150 per acre upon each tract of land, thus making the total value of the larger and lesser farms $120,660 and $79,087.50, respectively. The larger farm was assigned to John C. Noel, who owned a three-fourths interest therein, and the smaller one was allotted to R. W. Noel. The one-half interest in the smaller farm owned by John C. Noel exceeded in value the one-fourth interest in the larger farm owned by R. W. Noel by $9,378.75, which sum R. W. Noel was directed to pay to John C. Noel. The latter filed an exception to the valuation fixed by the commissioners upon the ground that each acre of the larger farm was worth relatively $50 less than each acre of the smaller farm. At a hearing on the exception, each party testified and introduced ten witnesses. The testimony offered by John C. Noel tended to sustain his exception, whilst that introduced by R. W. Noel supported the value fixed by the report of the commissioners. The circuit court confirmed the report of the commissioners and rendered judgment accordingly. On this appeal by John C. Noel, it is correctly conceded that the partition and valuation made by the commissioners, under the circumstances shown, supported by substantial evidence and confirmed by the court, is not reversible by this court unless it appears that the commissioners made a mistake in quantity or decidedly erred in judgment. 47 C. J. 509, sec. 613; 20 R. C. L. p. 766, sec. 45; Chamberlain v. Ballinger, 13 S. W. 429, 11 Ky. Law Rep. 966; McClanahan v. McClanahan, 14 S. W. 496, 12 Ky. Law Rep. 440; Lang v. Constance, 46 S. W. 693, 20 Ky. Law Rep. 502; Mead v. Mead, 101 S. W. 330, 31 Ky. Law Rep. 70; Garth's Guardian v. Thompson, 72 S. W. 782, 24 Ky. Law Rep. 1961.

But it is insisted that a gross error of judgment was made by the commissioners in fixing the relative

value of the two properties. The argument is founded upon two isolated statements taken from the testimony of one of the commissioners. He stated: "We did not go over every foot of the ground, of course. We went to satisfy ourselves, and we assumed our duties not as putting a value on it and you paying for it, but we put this value on it as if we were going to take the money out of our pockets and pay for it." Referring to a large dwelling house on the smaller place, he said: "I would consider it a liability. The money tied up in it would amount to $40,000 or $45,000 loss because anything or its equal is only worth as much as you can get out of it, and a $3,000 or $2,000 house there would have answered every purpose for these men." The brief quotations do not reflect fairly the effect of the testimony of the commissioner. He further testified:

"As I understood the directions of the court, it was our duty to consider these farms, and not the owners, with respect to the valuation of them, but that when it came into the divisions of the farms, that the desirability was an important factor.

"We considered the farms first as to the quality of the land. We considered the Pepper farm of superior quality to the Woods place.

"Then we considered them from a productive standpoint. This land around there is only used for agricultural purposes and for the production of stock. That is what it is being used for now, and that is why we considered it in the manner. The Pepper place is more susceptible of being tilled by any and everybody than the Woods place from the natural position of the land. To my mind it lays about in that respect (indicating with his hand): if you imagine that my hand will come around in this point, a man can stand on this point here, about three-quarters of this property, and see a man riding a horse on every other portion of it.

"It is abount equally drained. The fields are about equally proportioned in size, and the percentage of drainage to them. I believe if a plot was made of those places and one laid on the other without regard to the size and contour of them, that they would fit like two shingles.

"The Woods place now isn't as good a place. When you come to the way it lays in front there is no objection to it laying in front, but after you come by the house, up to the house, it doesn't lay as well.

"The land in the rear is rolling and a colder soil. One field has a number of boulders on it some as large as my fist. There is a lot of waste land on it. Most of that could be grassed, is in grass. But the Woods place isn't, some of it is absolute loss. There is a place on the creek there almost a mile; then there is some that runs up between the Woods place and the Bedford place that is a loss.

"Then we considered it from the improvement standpoint. There is a comfortable dwelling house, and four tenant houses in bad condition, and the fencing is bad. Don't believe the fenses on either place would turn a sow and pigs. There are five barns on the Pepper place, four of them average size, and in good condition, the other a little smaller, but in good condition. There are two tobacco barns on the Woods place, one in good condition and one poor; the stable in bad condition. The silo on either place is satisfactory for the size of the farm, the one on the Woods farm too large, if anything."

Then follow the statements first quoted and some further and forceful observations of pertinent points entering into the equation. It will be seen that the commissioners proceeded with care and endeavored earnestly to perform their delicate and difficult duty. The commissioners were concededly competent, which accounted, no doubt, for their choice. Their report displayed an accurate knowledge of the lands and a just appreciation of the task imposed by the agreed order. The result reached was sustained by the testimony of qualified witnesses, and it was approved by the circuit judge, then presiding, who was himself unusually competent in matters of that character.

The testimony was conflicting, but the reasons given by the different witnesses explained the contrariety. The values were proven from the viewpoints of various witnesses. The many facts and factors to be considered were all given due weight. In certain respects, the advantage lay with the larger place, whilst in other particulars the smaller farm was to be preferred. Part of the witnesses emphasized one feature of advantage, whilst

others accepted a different aspect of the matter presented. A careful analysis of the testimony is quite convincing that the report of the commissioners in this case deserved the credit that is reposed in such reports by the decisions of this court.

On the whole case, we find no such error of judgment or misapplication of method of valuation as would warrant interference with the report of the commissioners when it is supported by substantial evidence and approved by the trial court who saw and heard the witnesses. Chamberlain v. Ballinger, 13 S. W. 429, 11 Ky. Law Rep. 966; Garth's Guardian v. Thompson, 72 S. W. 782, 24 Ky. Law Rep. 1961.

The judgment is affirmed.