## Fry et al. v. Fry.

(Decided June 22, 1934.)

COLLINS & COLLINS for appellants.

A. C. JARVIS and NORMAN W. BOWMAN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an action of a foster son against the father to settle a partnership between them.

In 1926 Lowell Fry, the foster son, and J. P. Fry acquired title by purchase to a tract of land in Lewis county, Ky., for the consideration of $500 cash paid by J. P. Fry and their joint notes executed and delivered to Lake Boyd. At the time they acquired title, J. P. Fry owned a herd of 35 sheep. They agreed to purchase and did purchase other sheep until their herd comprised 60. Lowell Fry was without means, and he proposed to J. P. Fry that if he would furnish him $10, he would go to Akron, Ohio, and go to work and send money back to buy sheep. J. P. Fry bought 28 head at the price of $285. Lowell Fry sent to J. P. Fry from Akron two money orders of $100 each. At the time they purchased the farm, J. P. Fry agreed with Lowell that, if the latter would remain on the farm and work, he (J. P. Fry) would feed the stock necessary to run the farm and apply the proceeds of the farm and the income from the sheep to the payment of the purchase money owing to Boyd. Beginning with the year 1926 to the year 1932, inclusive, J. P. Fry operated the farm, cared for the sheep, received the income therefrom, and applied the same to the payment of the notes to Boyd. Lowell raised one crop on the farm one of these years. The trial court found "the grand total of the receipts for these years was $2,600.00, and J. P. Fry, during the same period of time, out of the proceeds of the farm and this income from the sheep, paid for the partnership, $3,-240.42, leaving due him from the partnership, $640.42, not including borrowed money, advancements and other incidentals, aggregating $290.00."

It is admitted by Lowell Fry, excepting one year, he gave but little attention to the farm and sheep, that he left the responsibility upon J. P. Fry. No books were kept by either of the partners. To sustain his claim, Lowell, in his testimony, relied on his opinion and conclusions as to the value of the crops produced and the sheep and wool sold during the period of the partnership. The testimony of his supporting witnesses does not materially contradict the testimony of J. P. Fry. On the whole the evidence after carefully considering it for ourselves, without giving weight to the judgment of the chancellor, we are convinced the judgment is not clearly against the preponderance of the evidence.

As we said in Noel v. Noel, 235 Ky. 759, 32 S. W. (2d) 336, 337:

"The testimony was conflicting, but the reasons given by the different witnesses explained the contrariety. The values were proven from the viewpoints of various witnesses. The many facts and factors to be considered were all given due weight. * * * Part of the witnesses emphasized one feature of advantage, whilst others accentuated a different aspect of the matter presented. * * * On the whole case, we find no such error of judgment or misapplication of method of valuation as would warrant interference with the chancellor's finding of facts. It is supported by substantial evidence. Chamberlain v. Ballinger, 13 S. W. 429, 11 Ky. Law Rep. 966; Garth's Gdn. v. Thompson, 72 S. W. 782, 24 Ky. Law Rep. 1961."

The judgment is affirmed.