Hazel KNOTT and Mildred V. Peace, Appellants,

v.

Wilbert Frederick GARRIOTT; Barbara Ann Garriott; Wilbert Frederick Garriott, Executor, Estate of Wilbert Martin; Joseph L. Garriott; Annette Garriott; and David Wayne Garriott, Appellees.

No. 89–CA–0512–S.

Court of Appeals of Kentucky.

Dec. 8, 1989.

Discretionary Review Denied
by Supreme Court
March 7, 1990.

Irene P. Long, Bedford, for appellants.

Ruth H. Baxter, Carrollton, for appellees.

1. 394.090. MARRIAGE REVOKES WILL—EXCEPTION.—Every will shall be revoked by the marriage of the person who made the will, except:
    (1) A will made in exercise of a power of appointment when the estate thereby appointed would not, in default of such appointment, pass to the heir, personal representative, or next of kin of the person who made the will;
    (2) A will that expressly provides that it is intended that a subsequent marriage shall not revoke the will.

Before McDONALD, MILLER and REYNOLDS, JJ.

MILLER, Judge.

This is an appeal from an order of the Carroll Circuit Court wherein it was held a marriage, subsequently annulled, of a testator did not operate to revoke the last will and testament of the testator under the provision of Kentucky Revised Statutes (KRS) 394.090.[1]

The facts are these: Following his first wife's death in 1982, the testator, Wilbert Martin, executed a will leaving his estate to the appellees: Wilbert Frederick Garriott; Barbara Ann Garriott; Joseph L. Garriott; Annette Garriott; and David Wayne Garriott.[2]

On November 21, 1986, a marriage license was issued to Wilbert Martin, authorizing his impending marriage to one Barbara Mattingly. On November 22, 1986, Wilbert prepared and signed a holographic will leaving all of his property to his two sisters—Hazel Knott and Mildred V. Peace, appellants herein. He married Barbara on November 30, 1986.

On April 20, 1987, upon petition by Barbara, the marriage between Wilbert and Barbara was declared invalid and annulled. KRS 403.120. The judgment annulling same contained a finding that Wilbert "lacked capacity to consent to such a marriage."

Upon Wilbert's death in January 1988, Hazel applied to the Carroll District Court, Probate Division, for letters of administration. Appellees came forward and produced for probate the January 1982 will. Thereafter, the 1986 will was presented for probate.

2. From the record, we discern that Wilbert Garriott and "his brother" (presumably either David or Joseph Garriott) were nephews of Wilbert Martin's late wife, Undine Martin, and were reared by Wilbert and Undine. We are unable to ascertain the relationships of the remaining appellees to each other or to the testator, Wilbert Martin.

In admitting the 1982 will to probate, the district court, in an order dated February 22, 1988, found that Wilbert lacked the mental capacity to execute the 1986 will. The judge reasoned that if Wilbert lacked the capacity to consent to marriage, as was held in the annulment of April 20, 1987, he lacked the capacity just eight days before to execute a valid will. As to the issue of revocation, the court held an annulled marriage is void *ab initio* and cannot operate to invalidate a will under the aforementioned statute.

On February 29, 1988, Hazel and Mildred filed suit in the Carroll Circuit Court, alleging that (1) Wilbert's marriage to Barbara revoked all wills made by him (KRS 394.-090) and he therefore died intestate; or, in the alternative, (2) if the marriage did not revoke his wills, his 1986 will should be admitted to probate inasmuch as it, by its own terms, revoked the 1982 will.[3] By these arguments, Hazel and Mildred sought to have the circuit court nullify the order of the district court admitting the 1982 will to probate.

The circuit court ordered the parties to submit briefs on the legal issues presented. Upon review, the circuit court upheld the district court on both issues. The judge entered an order stating Wilbert's annulled marriage did not "serve to revoke the [1982] will." The sole issue brought before us is whether a marriage, subsequently annulled, serves to revoke a will under KRS 394.090. We hold it does not. The decision of the circuit court is affirmed.

Appellants contend that under KRS 394.-090, a marriage operates to invalidate a will *eo instanti*. As such, it is asserted, Wilbert's failure to revive the instrument in accordance with KRS 394.100[4] leads to the conclusion that he died intestate. In support of this position, they cite a number of Kentucky authorities, which we deem not controlling. The most recently cited authority is *Duvall v. Garrett*, Ky., 457 S.W.2d 263 (1970), but that case does not involve a marriage subsequently annulled. Appellants further contend that KRS 394.-100, providing for revival of a revoked will or codicil, does not provide that annulment of a marriage will revive a will. The implication, of course, is that the legislature would have so provided had it intended the annulment of a marriage to revive a will. Having scoured the authorities, it appears no Kentucky case addresses the specific question presented herein and that the case at hand is one of first impression.[5]

At common law, the will of a woman was revoked upon marriage, unless, in an antenuptial agreement, she specifically retained the right to control disposition of her separate property. The will of a man was not revoked by marriage, but was revoked upon birth of legitimate issue. 79 Am. Jur.2d *Wills* § 576 (1975).

At present, all states have statutes pertaining to the power to and the requirements of making a valid will. Many, but not all states, have a statute similar to KRS 394.090. That statute, modified over time, was enacted to prevent fraud upon the marital rights of either party. *See Ransom v. Connelly*, 93 Ky. 63, 18 S.W.

---

**3.** Counts II and III of appellants' complaint pertaining to the 1986 holographic will were stricken after substantial evidence was presented that same was a forgery. There is no appeal from that order of the Carroll Circuit Court.

**4.** 394.100. REVOKED WILL MAY BE REVIVED, HOW.—A will or codicil, or part thereof, that has been revoked shall be revived only by re-execution or by a codicil executed in the manner required for making a will, and then only to the extent to which an intention to revive is shown thereby.

**5.** Early Kentucky cases cited by appellants primarily address the validity of antenuptial contracts and wills in light of subsequent marriages. *See Stewart v. Powell*, 90 Ky. 511, 14

S.W. 496 (1890), and *Stewart v. Mulholland*, 88 Ky. 38, 10 S.W. 125 (1888). In those cases, the courts were laboring under the yoke of unity marriage. Despite the utterance in *Duvall v. Garrett*, Ky., 457 S.W.2d 263 (1970), that our statute is unambiguous and should be strictly construed, Kentucky courts will uphold a will whenever possible. *See Puckett's Ex'x v. Puckett*, 305 Ky. 812, 205 S.W.2d 1016 (1947).

We are aware of cases involving resumption of alimony upon annulment of a subsequent marriage. *Cf. McCord v. McCord*, Ky.App., 558 S.W.2d 624 (1977). Those cases, however, are not controlling as they involve equitable considerations growing out of domestic relationships.

1029 (1892). We note that the Uniform Probate Code does not contain a similar provision.

The above statute is not to be confused with KRS 394.092 [6] which directs disposition of property left in a will to a former spouse. In our view, that statute contemplates a will executed *after* marriage; otherwise, KRS 394.090 and .092 could not be reconciled. A familiar rule of statutory construction is that, where possible, statutes relating to the same general topic should be construed so that "effect may be given to all of the provisions of each." *See Indiana Truck Corp. of Ky. v. Hurry Up Broadway Co.*, 222 Ky. 521, 1 S.W.2d 990, 991 (1928). In our view, KRS 394.092 is not relevant to the case *sub judice*.

While appellants assert otherwise, it appears the Kentucky legislature has not considered the possibility that a marriage which operates to invalidate a prior will may itself be invalidated. Annulment is a process peculiar to domestic relations law and has its origin in the canon law of the Catholic Church. *See* W. Scott, *Nullity of Marriage in Canon Law and English Law*, 2 U.Toronto L.J. 319 (1937–38). A sharp distinction is drawn between divorce and annulment. A decree annulling a marriage is a declaration or finding, for whatever reason, that *no* valid marriage ever existed. A divorce, on the other hand, is a declaration or recognition that a valid marriage took place. 4 Am.Jur.2d *Annulment of Marriage* § 1 (1962); 1 R. Petrilli, *Kentucky Family Law* § 10.1 (1988). If we were to adopt the position of the appellants, we would render the illogical decision that a will is revoked by operation of law— for example, marriage—despite the fact that the law may not recognize the validity of the marriage. We decline to do so.

For the foregoing reasons, the judgment of the Carroll Circuit Court is affirmed.

All concur.

---

6. 394.092. EFFECT OF DIVORCE OR ANNULMENT OF MARRIAGE OF TESTATOR.—(1) If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator or guardian, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, and other provisions conferring *some power or office on the former spouse* are interpreted as if the spouse failed to survive the decedent. If provisions are revoked solely by this section, they are revived by the testator's remarriage to the former spouse.

(2) This section shall apply to wills executed on or after July 15, 1982.