<u>**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**</u>
File Name: 17a0593n.06

No. 16-6290

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 27, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ARTIS ANDERSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| VANESSA M. DICKSON, Individually as | ) | KENTUCKY |
| Kentucky District Court Judge, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: COLE, Chief Judge; DAUGHTREY and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Artis Anderson, a Kentucky resident proceeding pro se, appeals the district court's judgment dismissing his civil rights complaint filed pursuant to 42 U.S.C. §§ 1981, 1983, and 1985. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

In February 2016, Anderson filed a complaint against Kentucky District Court Judge Vanessa M. Dickson, Kentucky Cabinet for Health and Family Services ("CHFS") employees Patricia Wiley and Patricia Biggerstaff, City of Versailles Police Officer J. Costigan, Woodford County Paramedics Rankin and Ford, assisted-living facility Council Oaks, Council Oaks employee John Short, Dr. Thomas Quisenberry, Dr. Thomas Coburn, Robert Horn, and Benny Sowder. The complaint arose from a May 18, 2015, incident during which Rankin, Ford, and Costigan were called to the home of Mary Ellen Reynolds, a woman in her 70's who was suffering from some form of dementia and whom Anderson had married just one week earlier. Ultimately, Reynolds was transported to Saint Joseph Hospital and kept overnight for

observation. Reynolds's daughter later petitioned a Kentucky state court to name her as Reynolds's guardian. During the course of the state-court proceedings, CHFS was appointed as Reynolds's guardian, and Reynolds's marriage to Anderson was annulled. Anderson asserted claims under §§ 1981, 1983, and 1985, alleging that the defendants, both individually and in conspiracy with one another, violated his due process rights, unlawfully interfered in his marriage, and impeded contracts that he had made with Reynolds. He also alleged that the defendants engaged in human trafficking and violated various state laws.

Anderson moved for a preliminary injunction, and several defendants moved to dismiss the complaint. Anderson then filed an amended complaint, adding Jessamine County Family Court Judge Jeff Moss and Nicholasville Police Officer Jacob Edwards as defendants. Anderson alleged that Judge Moss violated Kentucky law and his Fourteenth Amendment due process rights when he annulled his marriage and that Edwards violated his "constitutional rights to enjoy his spousal rights" when he threatened to arrest Anderson, who was attempting to visit Reynolds at Council Oaks. A number of the defendants moved to dismiss the amended complaint as well.

The district court denied Anderson's motion for a preliminary injunction; granted the defendants' motions to dismiss; dismissed with prejudice all claims asserted under §§ 1981, 1983, and 1985 against all defendants; and dismissed without prejudice all state-law claims. The district court denied leave to proceed in forma pauperis on appeal, concluding that any appeal would be frivolous. Anderson has since paid the appellate filing fee.

On appeal, Anderson argues that the district court erred by denying his motion for a preliminary injunction and dismissing his complaint. Several defendants have filed motions to recover damages and costs and impose sanctions, and Anderson has filed a motion asking us to refer his case to the United States Department of Justice.

We review de novo a district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012). To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The district court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein" without converting a motion to dismiss into a summary judgment motion. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011); *(*quoting *Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Although a pro se litigant is entitled to a liberal construction of his pleadings, we "need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

### Claims Brought Under 42 U.S.C. §§ 1981 and 1985

Anderson sought to bring claims against the defendants under §§ 1981, 1983, and 1985. The district court properly dismissed Anderson's claims under §§ 1981 and 1985 because his complaint contained no allegations that the defendants engaged in racial or other class-based discrimination, or that the defendants conspired to prevent federal officers from performing their duties or to obstruct justice or intimidate parties, witnesses, or jurors. *See* 42 U.S.C. §§ 1981, 1985; *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *Ana Leon T. v. Fed. Reserve Bank of Chi.*, 823 F.2d 928, 931 (6th Cir. 1987).

### Official Capacity Claims

The district court properly dismissed claims against the defendants in their official capacities, because Anderson failed to allege that the defendants acted pursuant to governmental policies or customs. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

### Claims Against Judges Dickson and Moss

The district court properly concluded that Judges Dickson and Moss were entitled to absolute judicial immunity, because Anderson's claims against them were based solely on

actions that the judges took in their judicial capacities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Anderson argues on appeal that Judges Dickson and Moss acted "in the complete absence of all jurisdiction," which, if true, would be sufficient to overcome judicial immunity. *Mireles*, 502 U.S. at 11-12. Specifically, Anderson contends that Judge Dickson lacked jurisdiction to hold a guardianship hearing and to appoint CHFS as Reynolds's guardian, because the evidence showed that Reynolds was not disabled and because Kentucky Revised Statute § 387.510(8)(b) states that a guardianship hearing "cannot be predicated on isolated incidents." Although presented as jurisdictional challenges, Anderson's arguments, at their core, are challenges to the merits of Judge Dickson's decision to appoint CHFS as Reynolds's guardian. In fact, contrary to Anderson's assertion, Kentucky Revised Statute § 387.510(8)(b) does not restrict a judge's authority to hold a guardianship hearing, but rather sets forth the standard that judges should apply when determining if an individual is disabled. Ky. Rev. Stat. § 387.510(8).

Anderson alleged that Judge Moss acted without jurisdiction because a different judge dismissed a different case on improper-venue grounds, and he argues on appeal that guardians and offspring lack authority to seek the annulment of a marriage. These claims are unavailing. First, the fact that a different judge dismissed a different case on improper-venue grounds has no impact on Judge Moss's jurisdiction over the annulment proceeding. Second, Kentucky law states that an annulment may be sought "by the legal representative of [a] party who lacked capacity to consent," and Judge Moss found that Reynolds lacked such capacity. Ky. Rev. Stat. § 403.120(2)(a). The annulment petition was filed by Wiley, a representative of CHFS, which was appointed as Reynolds's guardian eleven days before the annulment petition was filed. Because Anderson failed to set forth sufficient factual allegations to support his claims that Judges Dickson and Moss acted "in the complete absence of all jurisdiction," the district court properly dismissed Anderson's claims against them.

<u>*Claims Against Wiley*</u>

Most of Anderson's allegations against Wiley gave rise to only state-law claims, which, for the reasons discussed below, were properly dismissed without prejudice. At most, the allegations can be construed to raise two constitutional claims: (1) Wiley conspired with Horn and Short to deprive Anderson of his constitutional right to freely associate with his wife; and (2) Wiley conspired with Sowder to interfere with Anderson's constitutional right to enter into contracts.

With respect to Anderson's claim regarding the infringement of his right to freely associate with his wife, Anderson failed to identify any specific action that Wiley took to prevent him from communicating with or visiting Reynolds, and his conclusory legal claims do not state a claim for relief. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). Although Wiley petitioned to have Reynolds's marriage to Anderson annulled, the *Rooker-Feldman* doctrine bars review of the order granting the annulment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Finally, under Kentucky law, "[a] decree annulling a marriage is a declaration or finding . . . that *no* valid marriage ever existed." *Knott v. Garriott*, 784 S.W.2d 603, 605 (Ky. Ct. App. 1989). Because a valid marriage never legally existed, Anderson cannot now assert a claim for interference with his marital rights.

Anderson also failed to state a due process claim with respect to Wiley's alleged interference with his right to contract. The Due Process Clause of the Fourteenth Amendment prohibits a state actor from depriving an individual of life, liberty, or property without due process of law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 140-41 (6th Cir. 1997). Liberty interests include "the right of the individual to contract." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572 (1972). Here, Anderson summarily alleged that Wiley interfered with a contractual agreement for him to have control of Reynolds's farms. He set forth no allegations detailing specific actions that Wiley took, nor did he allege that the interference occurred in the absence of adequate procedural protections. Anderson therefore failed to state a claim for a violation of his procedural due

process rights. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). To the extent that Anderson sought to allege a substantive due process claim, "[t]he substantive Due Process Clause is not concerned with the garden variety issues of common law contract," but instead focuses on "'fundamental' interests." *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). Anderson has not alleged such an interest.

### Claims Against Biggerstaff

Anderson has waived any challenge to the district court's dismissal of his claims against Biggerstaff, because he did not address the dismissal of these claims in his initial appellate brief. *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 310–11 (6th Cir. 2005). In any event, Anderson's allegations that Biggerstaff authored false reports, relied on hearsay to support her reports, withheld her reports from him, and failed to document a complaint that he made against Reynolds's daughter give rise to state-law claims only. For the reasons discussed below, the district court properly declined to exercise supplemental jurisdiction over Anderson's state-law claims.

### Claims Against Council Oaks, Short, Dr. Quisenberry, Dr. Coburn, Horn, and Sowder

The district court dismissed Anderson's claims against Council Oaks, Short, Dr. Quisenberry, Dr. Coburn, Horn, and Sowder, because Anderson failed to allege that any of these defendants "were government officials or were otherwise working under color of state law." Anderson has waived any challenge to this dispositive finding by failing to address it in his initial appellate brief. *See id.*

Anderson argues in his reply brief that Council Oaks, Short, and Dr. Coburn could be held liable under § 1983 because they conspired with state actors. Again, Anderson waived this argument by failing to raise it in his initial appellate brief. *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003). Even if these arguments were properly preserved, however, Anderson could not prevail. Private parties who conspire with a state actor to commit offensive conduct may be found liable under § 1983. *See Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000). But Anderson's conclusory allegations were insufficient to state a conspiracy claim

under § 1983. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). In particular, Anderson did not identify any specific overt act taken by any of the defendants in furtherance of the alleged conspiracies. *See Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).

### *Claim Against Edwards*

In his amended complaint, Anderson alleged that Edwards "violated [his] constitutional rights to enjoy his spousal rights" by "threaten[ing] [him] with arrest for trespassing and claim[ing] that he was trespassing on Council Oaks' property by visiting his wife." The Supreme Court has held "that one type of constitutionally protected freedom of association is the right 'to enter into and maintain certain intimate human relationships [which] must be secured against undue intrusion by the State.'" *Sowards v. Loudon Cty.*, 203 F.3d 426, 432 (6th Cir. 2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). "The right of association is violated if [an] action constitutes an undue intrusion by the state into the marriage relationship.'" *Id.* at 433 (quoting *Adkins v. Bd. of Educ. of Magoffin Cty.*, 982 F.2d 952, 956 (6th Cir. 1993)). However, Anderson's marriage to Reynolds was annulled. As noted previously, under Kentucky law, "[a] decree annulling a marriage is a declaration or finding . . . that *no* valid marriage ever existed." *Knott*, 784 S.W.2d at 605. Because a valid marriage never legally existed, Anderson cannot show that Edwards unduly intruded upon his marital relationship.

### *Claims Against Rankin and Ford*

The district court properly dismissed Anderson's claims against paramedics Rankin and Ford, finding that even if they knew that Reynolds did not require emergency care when they transported her to the hospital, as alleged, this conduct did not violate Anderson's constitutional rights. In his complaint, Anderson alleged that Rankin and Ford's actions interfered with his "constitutional rights to be 'let alone.'" Even assuming the existence of a general "constitutional right to be let alone," *see Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 570 (1963) (Douglas, J., concurring); *Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 468 (1952) (Douglas, J., dissenting), transporting *Reynolds* to the hospital did not infringe

*Anderson's* rights. Anderson therefore lacked standing to assert his claim, because he did not suffer "an 'injury in fact.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004).

### Claim Against Costigan

Anderson alleged in his complaint that Costigan violated his constitutional rights by secretly recording his conversation with Reynolds while performing a welfare check. But, as the district court found, Anderson alleged no facts to suggest that he had a reasonable expectation that his conversation with Reynolds would be private, as Costigan was present when the conversation occurred. *See United States v. Riley*, 858 F.3d 1012, 1017 (6th Cir. 2017).

On appeal, Anderson also argues that Costigan falsified a report that stated that Reynolds was able to resist when she was taken to the hospital. At most, this would amount to a violation of state law. For the reasons discussed below, the district court properly declined to exercise supplemental jurisdiction over Anderson's state-law claims.

### State-Law Claims

We review for an abuse of discretion a district court's decision to decline to exercise supplemental jurisdiction over state-law claims. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Id.* (quoting *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 528-29 (6th Cir. 2008)). Because the district court properly dismissed all of Anderson's federal claims, it did not abuse its discretion when it declined to exercise supplemental jurisdiction over his state-law claims and dismissed those claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

### Denial of Motion for a Preliminary Injunction

We review a district court's denial of a preliminary injunction for an abuse of discretion. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The district court must balance four factors in determining whether to grant preliminary injunctive relief: "(1) whether the movant has a strong likelihood of success on the merits;

(2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

The district court did not abuse its discretion by denying injunctive relief. First, for the reasons discussed above, Anderson failed to show that he had a strong likelihood of success on the merits or that he would suffer irreparable injury absent the injunction. In fact, most of the injuries alleged by Anderson, such as the spending of Reynolds's money, Reynolds's placement in an assisted-living facility, and the appointment of a guardian had no legal impact on Anderson, since his marriage to Reynolds had been annulled. Furthermore, the issuance of an injunction could cause substantial harm to others, namely, Reynolds, who was deemed incompetent to make informed decisions about her personal affairs. Finally, Anderson failed to show that the public's interests would be served by the issuance of an injunction.

### *Pending Motions for Sanctions*

Dr. Quisenberry, Council Oaks, Short, and Horn have filed motions to recover damages and costs under Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912 as a sanction against Anderson for filing a frivolous appeal.

Rule 38 allows the court to assess "just damages and single or double costs" in response to a frivolous appeal. Fed. R. App. P. 38. Generally, an appeal is frivolous if "it is obviously without merit *and* is prosecuted for delay, harassment, or other improper purposes." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). Because Anderson seeks to prevail on the merits, there are no indications that he has brought this appeal for the sake of harassment or delay. *See id.* at 1213. But an appeal also is frivolous when it is filed out of "sheer obstinacy"—when the only issues in the case clearly have been resolved against the appellant. *Lawrence v. United States*,

229 F.3d 1152, 2000 WL 182452, at *3 (6th Cir. 2000) (table decision); *see also Martin v. Comm'r.*, 756 F.2d 38, 41 (6th Cir. 1985).

Because the record supports our conclusion that this appeal has been filed out of sheer obstinacy, it is frivolous. Anderson's litigation over his relationship with Reynolds has included four separate cases brought in the federal court alone. In addition to this case, Anderson has sought injunctive relief and millions of dollars in damages against Kentucky officials, organizations, and state employees (*see* 5:15-cv-00207-KKC); he has sought removal of one of his multiple state-court cases (*see* 5:17-cv-00202-JBC); and he even has sought habeas corpus relief (*see* 5:16-cv-00034-DCR). Each time he has filed a new case, the district court has dismissed the claims. And each time that he has appealed, this court has affirmed the dismissal.

Moreover, Anderson's obstinacy has real harms. Every new case or new appeal uses the courts' finite resources. And when the defendants have to respond to pleadings, motions, or briefs, they have to pay lawyers to defend against legal claims that are not only meritless, but that have been rejected multiple times before. Yet no matter how many times a court informs Anderson that he has no claim or that state court is the proper venue for him to litigate the issues, he continues to file new cases and new appeals, and he continues to demand millions of dollars in damages. This case is no exception; the district court warned Anderson that his case was frivolous and that he had no grounds for an appeal. Anderson appealed anyway.

Anderson has had more than his day in court. The defendants should not be forced to pay to defend these continuing and meritless claims. For that reason, we grant in part the motions for fees and costs. Because the defendants did not seek any specific amount, we must remand for the district court to determine the appropriate damages and costs, as well as Anderson's ability to

pay the sanction. *See Smith v. Capots*, 78 F.3d 585, 1996 WL 99322, at *3 (6th Cir. 1996) (table decision).

In addition, to ensure that Anderson does not continue to file frivolous claims, the district court is directed to enter an order requiring leave of court before Anderson files any new claims. "A district court has the authority to issue an injunctive order to prevent prolific litigants from filing pleadings without first obtaining court approval to do so." *Marbly v. Kay*, 238 F.3d 422, 2000 WL 1127783, at *1 (6th Cir. 2000) (table decision). This kind of order "is the proper method for handling the complaints of prolific litigators." *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987).

This court does not take lightly the sanctioning of litigants, especially those who are *pro se*. But we have a duty to ensure that parties do not have to defend themselves in perpetuity simply because a litigant like Anderson refuses to take no for an answer. And we have a duty to keep the court system free of repeat litigation so that every litigant gets the same opportunity for a fair decision that Anderson has abused.

Finally, we note that Anderson has filed a motion requesting us to refer this case to the Department of Justice for investigation. We have no authority to do so.

For the reasons set out above, we AFFIRM the judgment of the district court and REMAND the case for the district court's determination of sanctions.