## Louisville Cooperage Co., Inc. v. Lawrence.

May 19, 1950.

Wm. H. Field, Judge.

Mahan, Davis & Mahan and Edwin O. Davis for appellant.

Davis, Boehl, Viser & Marcus and Joseph Stopher for appellee.

STANLEY, COMMISSIONER—Reversing.

The circuit court directed a verdict for the defendant, William M. Lawrence, doing business as William M. Lawrence & Sons, in an action by the appellant for loss sustained through damage by fire alleged to have been caused by the negligence of the defendant.

The defendant was engaged in building a metal walkway and platform on a steel tower supporting a shavings bin and dust collector about sixty feet above the ground. The work required the use of electric and acetylene torches. It was understood that the company would continue its cooperage operations, which required the placing of a large quantity of dry shavings around the base of the tower. They were very flamable as practically all moisture had been removed. It was agreed by the defendant that he would keep these shavings wet at all times. If they collected faster than they were removed for burning in the furnace, it was a matter of a short time until new dry shavings would be added on top of the pile. The defendant's own testimony shows his awareness of the hazard. He furnished his own hose and seems to have wet down the shavings satisfactorily for several days, including the day before the fire. On that day no water was placed on the shavings, and they caught fire in the middle of the afternoon. Damage to the amount of $3,000 resulted before the fire could be extinguished. The defendant understood, he testified, that the company would have a watchman or guard at all times at this particular point. The company's evidence is that there was no such understanding or agreement, but, nevertheless, regular watchmen patrolled the plant and kept an eye on this place. One of them testified that as he was approaching the tower, he noticed sparks were falling from the welding being done on the top of it, and he put out an incipient blaze. Then a red hot piece of iron, four or five inches square, fell from the place where the defendant's men were working and into the shavings, causing an immediate fire to blaze up rapidly. The defendant's employees could not say whether such a piece of iron fell or not, but they and others testified that welding and cutting processes did not and could not have caused a red hot piece of metal that big, that only some sparks are emitted and $\frac{1}{2}$ or $\frac{1}{4}$ inch edge of the metal is made so hot. There is contradictory evidence of men experienced in the use of welding and cutting

devices as to whether the sparks and hot bits of metal would hold white or red heat long enough to have reached the shavings below the tower in that condition.

The court directed the verdict for the defendant after the evidence for both parties had been heard. His ruling was based upon the idea that, assuming the fire was started through the negligence of the defendant in failing to keep the shavings wet and in allowing the piece of hot metal to fall on them, the defendant was not liable for the loss since the plaintiff knew of the imminent hazard and was charged with the duty of supervising the work and the conditions; that though there was no definite proof that the plaintiff knew Lawrence had stopped wetting the shavings, yet it was also the plaintiff's duty to "protect the situation," i. e., to see that the shavings were kept wet and it had failed to do so. This was, in effect, to hold the company was contributorily negligent as a matter of law.

No question is made that the defendant's negligence was proved. It may be said likewise that the duty of the plaintiff is to be measured by the danger it should reasonably have apprehended. We concur in part in the view of the trial court, which is more implicit than expressed, that where the danger of loss by fire is seen, it is the duty of the owner to use all reasonable diligence to protect his property and to avert it, and if he fails to do so, he must suffer the consequences of his own negligence. 22 Am. Jur., Fires, Secs. 55, 56; Shearman and Redfield on Negligence, Secs. 741, 754. But we cannot agree with the further view that under the circumstances of the case, knowing the imminence of the hazard of fire, the plaintiff was charged with the duty of supervising what the defendant did or did not do, and that, failing to do so, the plaintiff was not as a matter of law entitled to recover its loss, assuming, as the court said, that the defendant's negligence had been established. This view of the court is elaborated by the appellee in his emphasis upon the fact that the plaintiff insisted upon continuing the operation of its cooperage plant while the fire hazard arising from the defendant's work existed.

Both reason and authority show that in many situations a person will not be chargeable with contributory negligence for not anticipating that another will violate

his duty in a given particular and for not providing against such possible violations of it.

It was the belief of both parties to the contract that keeping the shavings wet would avert or at least lessen the danger. The experience of several days during the course of the work proved that faith to have been well founded. It is quite elementary that a duty to exercise the proper degree of care may have its origin, as here, in a contract. This contract not only created the condition which furnished the occasion of the alleged tort, but embraced the specific provision, the breach of which seems to have caused the loss. The defendant promised the plaintiff he would do what it would otherwise have done or been chargeable with doing. He contracted to relieve the plaintiff of the duty of keeping the combustile shavings incombustile. He thereby became liable to the plaintiff if while relying upon that promise it was injured by the defendant's violation of his contractural duty of vigilance in that respect.

A contract by which one party delegates and the other assumes a duty in respect to safety to persons or property serves as a criterion and measure of the rights of the parties thereto as between themselves although such contract will not be permitted to avoid personal responsibility to third persons. 38 Am. Jur., Negligence, Sec. 93.

A duty voluntarily assumed, cannot be carelessly abandoned without incurring liability for injury resulting from the abandonment. 38 Am.Jur., Negligence, Sec. 17; Shearman and Redfield on Negligence, Sec. 8. As characteristicly stated by Judge Cordozo in Glanzer v. Shepard, 233 N. Y. 236, 239, 135 N. E. 275, 276, 23 A.L.R. 1425, 1427, "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." And again in H. R. Moch Co. v. Rensselaer Water Co., 246 N.Y. 160, 159 N.E. 896, 898, 62 A.L.R. 1199, "The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all."

The assumption of special vigilance by the defendant in the case in hand would seem to have justified plaintiff's action in failing to do what it would other-

wise have done, or at least have been chargeable with doing. This is, therefore, not a case where the plaintiff saw or by ordinary care could have seen that the defendant had in fact exposed it to the risk so that it could no longer rely upon the general assurance and presumption that the defendant would do his duty. In the present circumstances, contributory negligence cannot be attributed to the plaintiff as a matter of law. Shearman and Redfield, Negligence, Secs. 110, 111. It could well be found by a jury that the plaintiff was justified in its reliance upon the defendant performing its undertaking to the degree the evidence showed it did rely. McLeod v. Rawson, 215 Mass. 257, 102 N.E. 429, 46 L.R.A., N.S., 547.

We think the authorities relied upon by the appellee in support of the ruling of the trial court are inapplicable. They are, in effect, that a person must exercise ordinary care for his own safety or the safety of his property and cannot rely upon the assumption that others will not injure him or his property where, under the same or similar circumstances, an ordinary prudent person would not do so; in other words, that due care must yield to the realities of a situation to the extent that if one observes a violation of duty which imperils him, he must be vigilant in trying to avoid that injury. Peerless Manufacturing Corp. v. Davenport, 281 Ky. 654, 136 S.W.2d 779; Price v. T. P. Taylor & Co., 302 Ky. 736, 196 S.W.2d 312; 45 C.J. 954, 957; 38 Am. Jur., Negligence, Sec. 192. This rule is adverted to above in relation to fires. The distinctions, as already indicated, are an express contract on the part of the defendant to relieve the plaintiff of that general duty and an absence of evidence that the plaintiff knew that the defendant had been guilty of such failure.

We are of opinion that directing a verdict for the defendant was error. No other question is decided.

Judgment reversed.