NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0739n.06

**No. 09-5318**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr>
<td>

JOHN WALKER, Individually and as Administrator for estate of Ann-Ashia Maddox; GREG MCKINNEY, Individually and as Administrator for estate of Deashia McKinney; estate of Nakiya McKinney; JANET TONGUE, as Administratrix for estate of Sherry Lynn Maddox; estate of Crystal Maddox; estate of Demita Wise; PATRICK NETHERTON, as Guardian and Next Friend of Y.M. and as Administrator for estate of Heaven Maddox; estate of Earth Maddox; CARLA SPARROW, Individually and as Administrator for estate of Dariyel Maddox; ROGER HARDIN, JR., as Guardian and Next Friend of N.H.; ELIZABETH MADDOX; DARYL MADDOX; MICHAEL TAYLOR, Individually; PATRICK NETHERTON, as Guardian and Next Friend of Y.M. and as Administrator for estate of Heaven Maddox; estate of Earth Maddox,

     Plaintiffs - Appellants,

v.

PHILIP MORRIS USA, INC., GAIL BROTHERS; MICKEY BROTHERS; ALTRIA GROUP, INC.; PHILIP MORRIS INTERNATIONAL, INC.; NATHAN JOHNSON; JACKSON FURNITURE INDUSTRIES, INC.,

    Defendants - Appellees.

</td>
<td>

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

**O P I N I O N**

</td>
</tr>
</table>

---

**BEFORE: KETHLEDGE and WHITE, Circuit Judges, and BECKWITH, District Judge.**[*]

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

**HELENE N. WHITE, Circuit Judge.** Plaintiffs, the surviving relatives and administrators of the estates of the victims of a house fire, appeal the district-court orders denying their motion to remand this diversity case to the Kentucky state court and granting Defendants' 12(b)(6) motions to dismiss. Because we conclude the district court erred in denying the motion to remand, we **VACATE** the district court's orders of dismissal, and remand for entry of an order remanding the case to state court.

## I. BACKGROUND

### A. Factual Background

On February 6, 2007, at approximately 3:51 a.m., a fire broke out at 235 Guthrie Drive, a residence in Bardstown, Kentucky. Daryl Maddox, who lived at the premises, was the first to notice the fire; although intoxicated, he tried to rouse the other inhabitants, then fled outside to seek help. Maddox alerted the neighbors, who tried unsuccessfully to enter the burning house and rescue those remaining inside. By the time the blaze was brought under control, ten persons – four adults and six children – were dead.

The official report lists the cause of the fire as unknown, but suggests that the most likely source of ignition was "smoking material." Investigators traced the origin of the fire to an area in the living room where Johnny Litsey, a deceased tenant, usually sat in an upholstered chair. Friends and family described Litsey as a moderate to heavy smoker, who spent most of his days (and many nights) sitting in "his" chair. No one who responded to the fire recalled hearing a smoke detector sounding an alarm. An investigative report states that Maddox told investigators that there was a smoke detector in the hallway, but he "tested it and it did not work."

2

Defendant Nathan Johnson owned the Guthrie Drive property and rented it to Sherry Maddox, a victim of the fire. Johnson hired his cousin Mickey Brothers and Brothers's wife, Gail, to maintain the property and perform all repairs. According to service records, the Brothers tested the smoke and carbon monoxide detector in January 2006, while performing other maintenance work, but it had not been checked since.

Plaintiffs commenced this action in the Circuit Court for Nelson County, Kentucky, alleging negligence on the part of Johnson and the Brothers,[1] and product-liability claims against the cigarette manufacturer, Philip Morris USA, its parent entities, Philip Morris International, Inc., and Altria Group, Inc. (together, "Philip Morris"), and the manufacturer of the chair that initially caught fire, Jackson Furniture Industries, Inc. ("Jackson Furniture").[2] Plaintiffs claim the fire could have been prevented if the Kentucky Defendants had maintained a working smoke detector in the rental home, and if Philip Morris and Jackson Furniture used safer designs for their products. In particular, Plaintiffs contend that the fire would not have occurred if Johnny Litsey had been smoking "reduced ignition propensity" cigarettes ("RIPC"), which are less likely than regular cigarettes to cause smoking fires,[3] and that the existence of a safer alternative cigarette design rendered Philip Morris's

[1]Nathan Johnson and Gail and Mickey Brothers are referred to collectively as "the Kentucky Defendants," or "the non-diverse Defendants."

[2]Philip Morris USA and its parent company, Altria Group, Inc., are Virginia corporations with their principal place of business in New York. Philip Morris International, Inc. is a Delaware corporation with its principal place of business in New York. Jackson Furniture is a Tennessee corporation with its principal place of business in Tennessee.

[3]At the time of the fire, RIPC cigarettes were not available for purchase in Kentucky. Plaintiffs assert that Philip Morris began selling RIPC cigarettes in 2004, in New York and Canada. Philip Morris states that, at the time of the fire, New York, Vermont and California were the only states that required cigarettes sold in those states to meet certain standards for reduced ignition propensity. On April 1, 2008, the Kentucky legislature adopted a similar law, effectively banning

3

regular cigarettes unreasonably dangerous. Plaintiffs also allege that Jackson Furniture should have used fire-retardant products in manufacturing Litsey's upholstered chair.

## B. Procedural History

Philip Morris was served the complaint on February 4, 2008. On March 14 and 24, 2008, Philip Morris received the Brothers' and Johnson's Answers denying Plaintiffs' allegations. On April 9, 2008, Philip Morris received copies of three signed affidavits in which Nathan Johnson, Gail Brothers and Mickey Brothers denied assuming a duty to maintain or inspect the smoke detector. The Brothers' affidavits state that Mickey Brothers checked the smoke detector on one occasion when asked to do so by Sherry Maddox, and that there were no other requests to check or service the smoke detector made by Maddox or any other resident. Mickey Brothers' affidavit adds that on that one occasion, he "told Sherry Maddox to check [the smoke detector] in the future whenever she changed the time on her clocks in the spring and the fall."

On April 11, 2008, with the support of all Defendants, Philip Morris removed the case to the Federal District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1446(b). Philip Morris argued that the Kentucky Defendants were fraudulently joined, and that, in their absence, the complete-diversity requirement of 28 U.S.C. § 1332(a)(1) was met. On April 17, Philip Morris moved to dismiss Plaintiffs' claims. On May 1, 2008, Plaintiffs filed a motion to remand, arguing that Philip Morris's removal notice was untimely and that the district court lacked subject-matter jurisdiction over the case because the joinder of the non-diverse Defendants was not fraudulent. Plaintiffs supported their motion to remand with Daryl Maddox's affidavit stating that he and his mother "relied on the maintenance people overseeing the property to test and service the smoke

the sale of non-RCIP cigarettes. *See* Ky. Rev. Stat. §§ 227.770-784.

4

detector. We believed the maintenance people tested the smoke detector when they checked the furnace filters and serviced other items in the home."

The district court denied Plaintiffs' motion to remand on August 28, 2008.

## II. DISCUSSION

### A. Removal/Remand Issue

Plaintiffs contend that the district court erred in denying their motion to remand because: (1) the notice of removal was untimely; and (2) the Kentucky Defendants were properly joined in the lawsuit.

### 1. Whether Philip Morris's Removal Notice was Timely Filed

Whether there is a defect in the removal procedure is a purely legal question that we review *de novo. Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003). Plaintiffs contend that Philip Morris's removal to federal district court was untimely. Philip Morris filed its notice of removal 65 days after being served with Plaintiffs' Complaint, and 28 days after receiving the Brothers' Answer to the Complaint.

In relevant part, the federal removal statute provides that a notice of removal "shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading . . . ." 28 U.S.C. § 1446(b). If, however, "the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." *Id.*

5

Plaintiffs argue that their Complaint contained unambiguous information concerning the nature of their state-law claims against the Kentucky Defendants, and therefore Philip Morris had no excuse not to remove within 30 days of service. We disagree.

Philip Morris could not divine that the case was removable based only on a complaint that "unambiguously" asserted claims against non-diverse defendants. Section 1446(b) allows the filing of a notice of removal within 30 days after receipt of a document "*from which it may first be ascertained*" that the case is removable. *Id.* (emphasis added); *see also Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 (6th Cir. 1991) (unpublished table case) ("§ 1446(b) starts the thirty-day period running from the date that a defendant has solid and unambiguous information that the case is removable."). Here, Defendants' basis for asserting fraudulent joinder was not ascertainable until receipt of co-Defendants' answers. Thus, Defendants' removal notice was timely filed.

### 2. Whether the District Court Erred in Denying Plaintiffs' Motion to Remand

#### a. The District Court's Decision.

As to the Kentucky Defendants, the issue central to liability is whether they voluntarily assumed a duty of care to maintain and repair a smoke detector that failed to function on the night of the fire. The parties presented the following evidence on this issue:

1. According to the property's service records, the Kentucky Defendants inspected the smoke detector in January 2006, while performing other maintenance work. There is no evidence of any subsequent inspection.

2. By affidavit, the Kentucky Defendants claim that they told Sherry Maddox, the main tenant, to check the smoke detector twice a year. Sherry Maddox died in the fire.

3. According to a report, Daryl Maddox told fire investigators that he tested the smoke detector some time before the fire and that it did not work.

4.	By affidavit, Daryl Maddox claims that Plaintiffs relied on the Kentucky Defendants to test and service the smoke detector, and believed that the Kentucky Defendants did so when they checked the furnace filters and serviced other items in the home.

Upon reviewing this evidence, the district court held:

> [I]n light of the evidence submitted by Phillip [*sic*] Morris USA in support of removal, Plaintiffs have failed to present any countervailing evidence that goes to the issue of whether the non-diverse Defendants assumed the duty to test the smoke detector. Although Plaintiffs replied to Phillip [*sic*] Morris USA's response to the motion to remand, they tendered no evidence to either refute the non-diverse Defendants' answers and affidavits, or to support their own allegations.
>
> Plaintiffs reiterate the Affidavit of Daryl Maddox, which states in relevant part, "We relied on the maintenance people overseeing the property to test and service the smoke detector. We believed the maintenance people tested the smoke detector when they checked the furnace filters and serviced other items in the home." These statements do not establish that the non-diverse Defendants assumed the duty to test the smoke detector, since mere reliance by one person cannot itself establish assumption by another. Moreover, Mr. Maddox's sworn statement that residents of the home relied on the non-diverse Defendants to test the smoke detector contradicts his earlier statement to Senior Deputy State Fire Marshal Robert Goodwin, Jr.
>
> Insomuch as Plaintiffs' lack of evidence reduces their claims to mere conclusory allegations, there is no reasonable basis for predicting that Plaintiffs might establish liability in their claims against the non-diverse Defendants.

*Walker v. Phillip* [*sic*] *Morris USA Inc.*, No. 3:08-CV-191-S, 2008 WL 4066064, at *3-4 (W.D. Ky. Aug. 28, 2008) (footnote omitted). The district court concluded that the Kentucky Defendants were fraudulently joined and denied Plaintiffs' motion to remand.

**b. Standard for Ruling on a Motion to Remand where Fraudulent Joinder is Alleged.**

A party who removes a case involving non-diverse parties to federal court on diversity grounds will defeat a motion to remand if it can show that the non-diverse parties were fraudulently joined. *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "Fraudulent joinder occurs when the non-

removing party joins a party against whom there is no colorable cause of action." *Id.* (citing *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)). The non-moving party's motive for joining the non-diverse party to the lawsuit is "immaterial to our determination regarding fraudulent joinder." *Jerome-Duncan*, 176 F.3d at 907.

This court's fraudulent-joinder law is derived from the Fifth Circuit's discussion in *Bobby Jones Garden Apartments, Inc. v. Suleski*, followed by this court in *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). In *Bobby Jones*, the Fifth Circuit held:

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, and that there was no colorable ground for so claiming.

391 F.2d 172, 176 (5th Cir. 1968) (citation and internal quotation marks omitted). In adopting the Fifth Circuit's analysis, this court explained that "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander*, 13 F.3d at 949 (quoting *Bobby Jones*, 391 F.2d at 176). In other words, "the question [is] whether there was any 'reasonable basis for predicting that [the plaintiff] could prevail.'" *Id.* (quoting *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979)). Further, "'[A]ny disputed questions and fact and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party.'" *Id.* (quoting *Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990)) (emphasis removed).

In *Coyne*, this Court relied on *Alexander* in clarifying the standard for resolving claims of fraudulent joinder:

8

> To prove fraudulent joinder, the removing party must *present sufficient evidence* that a plaintiff could not have established a cause of action against non-diverse defendants under state law. *See Alexander*, 13 F.3d at 949. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party." *Id.* All doubts as to the propriety of removal are resolved in favor of remand. *See id.*

*Coyne*, 183 F.3d at 493 (emphasis added). *Coyne* thus states that the removing party may "present . . . evidence" showing the absence of a state-law claim, but does not elaborate on the proper approach when considering such evidence. The *Coyne* court resolved the question before it by scrutinizing the pleadings to determine that, as alleged, the facts would not have supported a cause of action under state law.[4]

In *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007), in the context of a case removed from state court based on the defendant's assertion of jurisdiction under the Magnuson-Moss Act, this court observed:

> Questions of removal . . . may involve facial and factual inquiries. When ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as

---

[4]This court observed in *Coyne*:

Upon *examination of the record*, we find that there was sufficient evidence for the district court to conclude that Plaintiffs could not have established a cause of action against the non-diverse Defendants under state law, thereby permitting removal of this action to federal court. While Plaintiffs' complaint alleged that the local Defendants were liable to Plaintiffs as suppliers pursuant to Ohio Rev. Code § 2307.78(A)(1), either for the failure to warn about the alleged nicotine defect or for the negligent sale of cigarettes, *Plaintiffs do not allege* that the wholesalers and retailers knew of the so-called nicotine defect any sooner than members of the general public; thus, the wholesalers and retailers are excluded from product liability under § 2307.78(A)(1). . . . Hence, under Ohio law, there was no reasonable basis for predicting that, *on the facts alleged*, the local Defendants could be held liable for negligence.

*Coyne*, 183 F.3d at 493 (emphasis added).

9

it is stated at the time of removal, and the defendant's notice of removal. *See, e.g., Miller v. Grgurich*, 763 F.2d 372 (9th Cir.1985). But federal courts may look beyond the pleadings to assess challenged facts; this may occur, for example, when the defendant alleges that the plaintiff fraudulently joined non-diverse defendants to destroy diversity jurisdiction. 16 Moore's Federal Practice § 107.41[1][e][ii]. In that context, the court may employ a summary-judgment-like procedure to examine affidavits and deposition testimony for evidence of fraud. *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311-312 (5th Cir. 2002)).

491 F.3d at 330. Again, although observing that some fact inquiry and summary-judgment-like procedure is appropriate where fraudulent joinder is alleged, the court did not elaborate further.

The Fifth Circuit, however, has on several occasions clarified the approach to be employed in situations where a fact inquiry is proper. In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc), the Fifth Circuit explained that there are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Noting that the second option had generated "uncertainty" among district courts, the Fifth Circuit distinguished two approaches to determine whether a plaintiff has a reasonable basis of recovery under state law:

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Id.* (footnotes omitted). However, the court cautioned, "a summary inquiry is appropriate only to identify the presence of *discrete and undisputed facts* that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74 (emphasis added).

10

In *Travis*, the Fifth Circuit discussed in greater detail the appropriate analysis when a district court pierces the pleadings:

> [A]lthough the fraudulent joinder and Rule 12(b)(6) standards appear similar, the scope of the inquiry is different. For Rule 12(b)(6) motions, a district court may only consider the allegations in the complaint and any attachments. For fraudulent joinder, the district court may . . . "pierce the pleadings" and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. *Any contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor.* The burden of persuasion on those who claim fraudulent joinder is a heavy one.

*Id.* at 648-49 (citations omitted) (emphasis added). Thus, when deciding a motion to remand involving fraudulent-joinder allegations, the Fifth Circuit applies a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss.

Several other circuits agree:

> Many courts agree that the defendant bears a heavy burden to prove fraudulent joinder:

> The standard requiring that the removing party show that the plaintiff cannot establish a claim against the allegedly fraudulently joined party, even after resolving all issues of law and fact in the plaintiff's favor, is *even more favorable* to the plaintiff than the standard for ruling on a motion to dismiss.

11

16 James W. Moore et al., Moore's Federal Practice - Civil §107.14[2][c][iv][B] (3d ed. 1997) (emphasis added).[5] Other courts do not use as strong language, but nevertheless emphasize the limits of the inquiry on a motion to remand.[6]

Courts also generally agree with the Fifth Circuit that,

[i]n ruling on a remand motion in a case involving allegations of fraudulent joinder, the district court must evaluate all of the factual allegations (in the defendants' affidavits and deposition transcripts used to support their removal petition, plaintiff's affidavits and deposition transcripts, and the verified complaint) in the light most favorable to the plaintiff, *resolving all contested issues of substantive fact in favor of the plaintiff*.

---

[5]Moore's Federal Practice cites the following Third, Fourth and Seventh Circuit cases: *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009) ("A defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent, and some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6)") (citations omitted); *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999) ("The party alleging fraudulent joinder bears a heavy burden -- it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor. This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).") (citation omitted); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) ("The inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted."). *See also Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir. 2000) (unpublished table case) ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced.") (citation omitted).

[6]*See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (distinguishing between analysis in cases where plaintiffs fail to state a claim against sham defendants and "inquiry as to whether those defendants could propound defenses to an otherwise valid cause of action."); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' the jurisdictional inquiry 'must not subsume substantive determination.'") (*quoting B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)).

*Id.* at § 107.14[2][c][iv][C] (emphasis added).[7]

In sum, courts generally agree on the following two rules when deciding motions to remand that involve allegations of fraudulent joinder. First, even if the district court "pierces the pleadings" to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential. Second, any contested issues of fact must be construed in the plaintiff's favor.

## B. Whether Plaintiffs Stated a Colorable Claim Against the Kentucky Defendants

Here, it is unclear which standard the district court applied in ruling on Plaintiffs' motion to remand. The court recited the rule set forth in *Alexander*:

> There can be no fraudulent joinder unless it [is] clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law… Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. [Restated,] the

---

[7]Moore's Federal Practice cites the following Third, Fourth, Eighth, Ninth and Eleventh Circuit cases: *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) ("In such a proceeding, the district court must "resolve all questions of fact . . . in favor of the plaintiff.") (quotation omitted); *Filla v. Norfolk & S. Ry.*, 336 F.3d 806, 811 (8th Cir. 2003) ("In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor."); *Hartley*, 187 F.3d at 424; *Ritchey*, 139 F.3d at 1318; *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) ("A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."). *See also Schur*, 577 F.3d at 764 ("Fraudulent joinder is difficult to establish--a defendant must demonstrate that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.") (quotation omitted); *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) ("We hold that, if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) ("The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff.").

question [is] whether there was any reasonable basis for predicting that [Plaintiffs] could prevail.

*Walker*, 2008 WL 4066064, at \*2 (quoting *Alexander*, 13 F.3d at 949) (alterations in *Walker*).

However, the court denied the motion to remand on the basis that Plaintiffs proffered insufficient factual support to overcome the Kentucky Defendants' affidavits denying that they assumed a duty to conduct additional inspections of the smoke detector. Plaintiffs argue that in concluding that "they tendered no evidence to either refute the non-diverse Defendants' answers and affidavits, or to support their own allegations," *Walker*, 2008 WL 4066064, at \*2, the district court erroneously resolved factual controversies in favor of the non-moving parties. We agree.

Under Kentucky law, a party who breaches a voluntarily assumed duty can be liable in tort. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 847 (Ky. 2005) (citing *Louisville Cooperage Co. v. Lawrence*, 313 Ky. 75, 230 S.W.2d 103, 105 (1950)). "A threshold inquiry under this doctrine is whether the putative tortfeasor has actually and specifically undertaken to render the services allegedly performed without reasonable care." *Id.* (citing *Good v. Ohio Edison Co.*, 149 F.3d 413, 420 (6th Cir. 1998)). The scope of the putative tortfeasor's undertaking "defines and limits" that person's duty. *Id.* (quoting *In re Temporomandibular Joint Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1493 (8th Cir. 1997)). In other words, providing assistance once does not, in and of itself, impose a duty to provide the same assistance again in the future.

It is not disputed that Plaintiffs' complaint stated a colorable claim against the Kentucky Defendants. Indeed, Defendants delayed in removing the case because the complaint itself was sufficient to withstand a 12(b)(6) motion. Defendants rely on the Kentucky Defendant's answers and affidavits in asserting that the Kentucky Defendants were fraudulently joined and the case was

14

properly removed. Under Kentucky law, Plaintiffs' case turns on whether the Kentucky Defendants assumed a duty to maintain and repair the smoke detector, and whether Plaintiffs acted in reliance. Daryl Maddox filed an affidavit claiming that Plaintiffs relied on the Kentucky Defendants to inspect and maintain the smoke detector. The Kentucky Defendants claim that they tested the smoke detector only once, and instructed Sherry Maddox to do so in the future. Acknowledging the sufficiency of Plaintiffs' complaint, the district court pierced the pleadings to consider summary-judgment-type evidence in deciding Plaintiffs' motion to remand. Upon finding that Maddox's affidavit was conclusory and his statement to the fire inspector contradicted his affidavit, the district court concluded: "[Plaintiffs] tendered no evidence to either refute the non-diverse Defendants' answers and affidavits, or to support their own allegations." *Walker*, 2008 WL 4066064, at *3.

Whether the Kentucky Defendants assumed a duty under Kentucky law is a factual question dependent on whether Mickey and Gail Brothers' self-serving affidavits are truthful and accurate or whether Daryl Miller's self-serving and conclusory affidavit is truthful and accurate. No discovery was taken in this case; all that is known is that the smoke detector was once inspected by the Kentucky Defendants and that there is reason to believe that Daryl Maddox knew it was not working. In denying Plaintiffs' motion to remand and dismissing the claims against the Kentucky Defendants, the district court effectively granted summary judgment for failure to show a genuine issue of material fact whether the Kentucky Defendants assumed a duty to conduct further inspections.

There are at least two problems with this approach. First, the district court's evaluation of the nature and sufficiency of the evidence supporting Plaintiffs' claims against the Kentucky Defendants went beyond the inquiry contemplated by the limited pleading-piercing exception recognized as appropriate where an undisputed factual inaccuracy or insufficiency in the plaintiff's

15

claim against the in-state defendant is the basis of removal. The fact-based, summary-judgment-type inquiry contemplated in such a case is the inquiry that is necessary to bring the true undisputed facts to the court's attention. An inquiry into the facts is not permitted in ruling on a motion on the pleadings; therefore, some piercing of the pleadings and factual presentation must be permitted if the court is to be informed of undisputed facts that undermine the well-pleaded claim that is otherwise colorable on its face. This piercing permits consideration of such undisputed facts that negate the claim. It is not intended to provide an opportunity to test the sufficiency of the factual support for a plaintiff's claim, as is done in a Rule 56 motion.

This leads to the second problem. In rejecting Plaintiffs' evidence as insufficient to overcome the Kentucky Defendants' affidavits, the court went beyond the relevant inquiry – whether Plaintiffs have a colorable claim under Kentucky law – and instead inquired whether Plaintiffs had adequate evidentiary support for their claim, the traditional Rule 56 inquiry. But Rule 56 motions for summary judgment are decided after discovery, not shortly after filing. Plaintiffs were made subject to a higher standard by Defendants' removal. Here the district court effectively decided that there were no genuine issues of material fact on a motion to remand, before discovery. Had Defendants not removed the case, the sufficiency of Plaintiffs' factual support would have been evaluated much later, after discovery.

Because there was no fraudulent joinder, there was no diversity. Thus, the district court lacked subject matter jurisdiction to address the merits of Plaintiffs' claim. We therefore **VACATE** the district court's orders of dismissal, and remand for entry of an order remanding the case to state court.

16