*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0343p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JOSEPH CASIAS,

               *Plaintiff-Appellant*,

     *v.*

WAL-MART STORES, INC.; WAL-MART
STORES EAST, L.P.; and TROY ESTILL,

               *Defendants-Appellees*,

No. 11-1227

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-781—Robert J. Jonker, District Judge.

Argued: April 18, 2012

Decided and Filed: September 19, 2012

Before: SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Scott Michelman, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Santa Cruz, California, for Appellant. Susan M. Zoeller, BARNES & THORNBURG, LLP, Indianapolis, Indiana, for Appellees. **ON BRIEF:** Scott Michelman, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Santa Cruz, California, Daniel S. Korobkin, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, Daniel W. Grow, TARGOWSKI & GROW, PLLC, Kalamazoo, Michigan, for Appellant. Susan M. Zoeller, BARNES & THORNBURG, LLP, Indianapolis, Indiana, Michael P. Palmer, BARNES & THORNBURG, LLP, South Bend, Indiana, for Appellees.

     CLAY, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. MOORE, J. (pp. 13–15), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  In this wrongful discharge action, Plaintiff Joseph Casias, a former Wal-Mart employee, appeals the district court's order denying his motion to remand and the dismissal for failure to state a claim following his termination for failing a drug test in violation of Defendants' drug testing policy.  Because we find no reasonable basis to conclude that the non-diverse Defendant Troy Estill ("Estill") would be liable and because we hold that the Michigan Medical Marihuana Act (MMMA) does not regulate private employment, we **AFFIRM** the judgment of the district court.

**DISCUSSION**

**I.        The Michigan Medical Marihuana Act**

In 2008, Michigan passed the MMMA, Mich. Comp. Laws § 333.26421 *et seq.,* to provide protections for the medical use of marijuana.  The Act defines the term "medical use" to include "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition."  *Id*. § 333.26423(e).  Although the Act broadly defines a "debilitating medical condition," only a "qualifying patient" or "primary caregiver" who is issued a "registry identification card" by the Michigan Department of Community Health are permitted to administer or use medical marijuana. *Id*. §§ 333.26423(h), (g), (i).  Thus any "qualifying patient" or "primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty of any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business." *Id.* §§ 333.26424(a),(b).

## II.     Plaintiff's termination from Wal-Mart

Plaintiff was an employee of Wal-Mart's Battle Creek, Michigan store from November 1, 2004 until November 24, 2009, when Plaintiff was terminated from Wal-Mart after he tested positive for marijuana, in violation of the company's drug use policy.

Plaintiff was diagnosed with sinus cancer and an inoperable brain tumor at the age of 17. During his employment at Wal-Mart, Plaintiff endured ongoing pain in his head and neck. Although his oncologist prescribed pain relief medication, Plaintiff continued to experience constant pain as well as other side effects of his medication. After Michigan passed the MMMA in 2008, Plaintiff's oncologist recommended that he try marijuana to treat his medical condition. The Michigan Department of Community Health issued Plaintiff a registry card on June 15, 2009, and, in accordance with state law, he began using marijuana for pain management purposes. Plaintiff stated that the drug reduced his level of pain and also relieved some of the side effects from his other pain medication. Plaintiff maintains that he complied with the state laws and never used marijuana while at work; nor did he come to work under the influence. Instead, Plaintiff used his other prescription medication during the workday and only used the marijuana once he returned home from work.

In November 2009, Plaintiff injured himself at work by twisting his knee the wrong way while pushing a cart. Plaintiff contends that he was not under the influence of marijuana at the time of his accident. Although Plaintiff came to work the next day, he had trouble walking and was driven to the emergency room by a Wal-Mart manager to receive treatment. Since Plaintiff was injured on the job, he was administered a standard drug test at the hospital in accordance with Wal-Mart's drug use policy for employees. Prior to his drug test, Plaintiff showed his registry card to the testing staff to indicate that he was a qualifying patient for medical marijuana under Michigan law. Plaintiff then underwent his drug test, wherein his urine was tested for drugs.

One week later, Defendant notified Plaintiff that he tested positive for marijuana. Plaintiff immediately met with his shift manager to explain the positive drug test.

Plaintiff showed the manager his registry card and also stated that he never smoked marijuana while at work or came to work under the influence of the drug. Plaintiff explained that the positive drug test resulted from his previous ingestion of marijuana within days of his injury in order to treat his medical condition. The shift manager made a photocopy of Plaintiff's registry card.

The following week, Wal-Mart's corporate office directed the store manager, Defendant Troy Estill, to fire Plaintiff due to the failed drug test, which was in violation of the company's drug use policy. Wal-Mart did not honor Plaintiff's medical marijuana card. Plaintiff sued Wal-Mart and Estill in state court for wrongful discharge and violation of the MMMA, arguing that the statute prevents a business from engaging in disciplinary action against a card holder who is a qualifying patient. Defendants thereafter removed the case to federal court based on diversity jurisdiction under 28 U.S.C. §§ 1332, 1441(a), and moved to dismiss the action for failure to state a claim. Plaintiff moved to remand the case to state court on the basis that Defendant Estill is a Michigan citizen, as is Plaintiff, and was properly joined, therefore eliminating diversity jurisdiction. Plaintiff also opposed Defendants' motion to dismiss.

The district court denied Plaintiff's motion to remand and granted Defendants' motion to dismiss. The district court held that Estill was fraudulently joined and could not be held liable under Michigan law because he did not make the decision to terminate Plaintiff, nor did he have the authority to fire Plaintiff. Therefore, the district court determined that Estill's citizenship should be disregarded for purposes of determining diversity jurisdiction. In addition, the district court held that the MMMA does not protect Plaintiff's right to bring a wrongful termination action because the MMMA does not regulate private employment. Plaintiff now appeals.

**DISCUSSION**

**I.        Motion to Remand**

We review a district court's ruling on the issue of jurisdiction *de novo*, but the district court's factual findings are reviewed for clear error. *Coyne v. American Tobacco*

*Co.*, 183 F.3d 488, 492 (6th Cir. 1999). "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (citation omitted). Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne*, 183 F.3d at 493 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (alteration in original)). A defendant is fraudulently joined if it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . " *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted). The relevant inquiry is whether there is "a colorable basis for predicting that a plaintiff may recover against [a defendant]." *Coyne*, 183 F.3d at 493. "The removing party bears the burden of demonstrating fraudulent joinder." *Alexander*, 13 F.3d at 949 (citation omitted).

When deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss. *See Walker v. Philip Morris USA, Inc.*, 443 Fed. App'x 946, 952–54 (6th Cir. 2011). As appropriate, we may "pierce the pleading" and consider summary judgment evidence, such as affidavits presented by the parties. *Id*. The court may look to material outside the pleadings for the limited purpose of determining whether there are "undisputed facts that negate the claim." *Id*. at 955–56.

Plaintiff argues that the district court improperly asserted diversity jurisdiction because Defendant Estill, a Michigan citizen, was a proper defendant in this case. According to Plaintiff, Defendant Estill participated in the tortious conduct alleged by Plaintiff by firing him from his position at Wal-Mart, and therefore was personally liable and properly joined in this action. In response, Defendants contend that Plaintiff failed to establish a colorable claim because Defendant Estill had no involvement in Plaintiff's termination. Defendants further argue that, under Michigan law, corporate agents cannot be liable for a wrongful discharge action.

In dismissing Plaintiff's motion to remand on the grounds of fraudulent joinder, the district court concluded that personal liability did not attach to Defendant Estill. In reaching this conclusion, the district court relied on federal and state cases that discuss employee liability. *See, e.g.,Freeman v. Unisys Corp.*, 870 F. Supp. 169, 173 (E.D. Mich. 1994); *Champion v. Nationwide Security, Inc.*, 205 Mich. App. 263, 266 (1994), *rev'd on other grounds*, 450 Mich. 702 (1996); *Urbanski v. Sears Roebuck & Co.,* No. 211223, 2000 WL 33421411, at * 3 (Mich. Ct. App. May 2, 2000); *Bush v. Hayes*, 282 N.W. 239, 240–41 (Mich. 1938); and *Allen v. Morris Bldg. Co.*, 103 N.W. 2d 491, 493 (Mich. 1960). The district court also relied on a number of undisputed facts, including:

> [That] Wal-Mart's corporate office in Arkansas, not Mr. Estill, made the decision to terminate Mr. Casias. In fact, Wal-Mart employed a specific drug screening department at its corporate headquarters for precisely this type of situation. Neither Mr. Estill nor any other individual store manager had the authority or the discretion to vary from the decisions made by Wal-Mart's Drug Screening department in Arkansas.

*Casias v. Wal-Mart Stores, Inc.*, 764 F. Supp. 2d 914, 916 (W.D. Mich. 2011). We agree with the district court's conclusion that the record is void of any evidence that would support a conclusion that Defendant Estill intended to cause an adverse action against Plaintiff or was a causal factor in the discharge of Plaintiff. Defendant Estill's role was to simply communicate the decision. On this basis, we decline to adopt Plaintiff's argument which, by extension, could make any individual who participates in the "communication" of a corporate decision a proper defendant in a cause of action.

We recognize that our holding is in some tension with tort law precedent. Under the traditional doctrine of proximate cause, a tortfeasor is sometimes, but not always, liable when he intends to cause an adverse action, *Staub v. Proctor Hosp.*, 131 S.Ct. 1186 (2011), or when he provides significant input into the ultimate employment decision. *Chattman v. Toho Tenax America, Inc.*, 686 F.3d, 339, 351 (6th Cir. 2012). Michigan courts have held that, "a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation." *Att'y Gen. v. Ankersen*, 385 N.W.

2d 658, 673 (Mich. Ct. App. 1986); *see Warren Tool Co. v. Stephenson*, 161 N.W. 2d 133, 148 (Mich. 1968) (applying Michigan tort law and holding that "the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort.") (citations omitted). There is, however, an absence of guidance from Michigan courts on the issue of a corporate employee's personal liability and the required level of individual participation necessary to establish a common-law wrongful termination action. We therefore consider Defendant Estill's liability in a wrongful termination suit in the context of other Michigan laws.

Under the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws. § 37.2101 *et seq.*, a supervisor can be personally liable as an employer's agent for discriminatory employment actions if he or she "is responsible for making personnel decisions." *Urbanski*, No. 211223, 2000 WL 33421411, at * 3 (citing *Jenkins v. Se. Mich. Chapter, Am. Red Cross*, 369 N.W. 2d 223 (Mich. Ct. App. 1985)).

Similarly, in the context of conversion cases, personal liability attaches when a Defendant "actively participates" in the conversion. *See Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.,* 444 N.W.2d 210, 213 (1989) ("When conversion is committed by a corporation, the agents and officers of the corporation may also be found personally liable for their active participation in the tort, even though they do not personally benefit thereby." (citations omitted)); *Trail Clinic, P.C. v. Bloch*, 319 N.W. 2d 638, 642 (1982) ("This Court has held that where a defendant acts on his own behalf or as an officer or agent of a corporation he is personally liable for the torts in which he actively participated." (citations omitted)). Thus, Michigan courts recognize limitations on the ability to attach personal liability to corporate actors. Defendant Estill's actions fall squarely within those limitations. In this case, Defendant Estill was not a participant in the decision to terminate Plaintiff's employment and merely communicated the corporate decision to Plaintiff. His mere acquiescence to the command from Wal-Mart's corporate office to communicate Plaintiff's termination does not render him subject to personal liability.

Therefore, we find that the district court appropriately held that Defendant Estiff's limited involvement in Plaintiff's discharge did not subject him to liability. The district court did not err in its conclusion that the state court complaint failed to state a plausible claim against Defendant Estill.

## II.          Motion to Dismiss

Plaintiff next claims that the plain language and policy of the MMMA protects patients against disciplinary action in a private employment setting for using marijuana in accordance with Michigan law.

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Vibo Corp. Inc. v. Conway*, 669 F.3d 675, 683 (6th Cir. 2012). In order to entitle the plaintiff to relief, the complaint "does not need detailed factual allegations" but should identify "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570).

### A.          Statutory Interpretation

According to the MMMA,

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act . . . .

Mich. Comp. Laws § 333.26424(a). The parties' dispute focuses on the use of the word "business" and whether the word simply modifies the words "licensing board or bureau," or in the alternative, whether "business" should be read independently from "licensing board or bureau."

Under Michigan law, courts interpreting statutes "must review the entire law itself in order to arrive at the legislative intent and provide an harmonious whole. If the intent is evident from this comprehensive review of the statute, [then the] inquiry ends and [the court] employ[s] the plain intent." *Grand Traverse Cnty. v. State*, 538 N.W. 2d 1, 4 (Mich. 1995) (citation omitted). When the "language used is clear and the meaning of the words chosen is unambiguous, a common-sense reading of the provision will suffice, and no interpretation is necessary." *People v. Lee*, 526 N.W. 2d 882, 885 (Mich. 1994) (quoting *Karl v. Bryant Air Conditioning*, 331 N.W.2d 456 (1982)) (internal quotation marks and citations omitted)). Only if the "statute is of doubtful meaning or ambiguous, is the 'door . . . open to a judicial determination of the legislative intent.'" *Id.* (quoting *Knapp v. Palmer*, 37 N.W. 2d 679, 681 (1949)).

The district court concluded that "the MMMA does not regulate private employment; [r]ather the Act provides a potential defense to criminal prosecution or other adverse action by *the state*." *Casias*, 764 F. Supp. 2d. at 922–23 (emphasis in original) (citation omitted). Specifically, the court concluded that the "MMMA contains *no language* stating that it repeals the general rule of at-will employment in Michigan or that it otherwise limits the range of allowable private decisions by Michigan businesses." *Id*. (emphasis in original). Moreover, the district court found that the word "business" does not govern private employment actions. *Id*.

We agree with the district court and find that the MMMA does not impose restrictions on private employers, such as Wal-Mart. Where as here, the "statute does not define one of its terms[,] it is customary to look to the dictionary for a definition" and be mindful that "undefined words are given meaning as understood in common language, taking into consideration the text and subject-matter relative to which they are employed." *Lee,* 526 N.W.2d at 885 (citation and internal quotation marks omitted); *see also West Town Line Assocs*., *LLC v. Mack & Meldrum Assocs., LLC,* 2010 WL 785938 (Mich. Ct. App. 2010) (finding that the dictionary definition of the word "business" meant a "commercial enterprise carried on and for profit," and "commercial, industrial, or professional dealings" or "an affair or matter"). Plaintiff's interpretation

is entirely inconsistent with state law precedent, which requires us to "interpret the words in their context and with a view to their place in the overall statutory scheme." *Manuel v. Gill*, 753 N.W. 2d 48, 56 (Mich. 2008); *G.C. Timmis & Co. v. Guardian Alarm Co.,* 662 N.W. 2d 710, 714 (2003) ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning.") (citations omitted).

Based on a plain reading of the statute, the term "business" is not a stand-alone term as Plaintiff alleges, but rather the word "business" describes or qualifies the type of "licensing board or bureau." Mich. Comp. Laws § 333.26424(a). Read in context, and taking into consideration the natural placement of words and phrases in relation to one another, and the proximity of the words used to describe the kind of licensing board or bureau referred to by the statute, it is clear that the statute uses the word "business" to refer to a "business" licensing board or bureau, just as it refers to an "occupational" or "professional" licensing board or bureau. The statute is simply asserting that a "qualifying patient" is not to be penalized or disciplined by a "business or occupational or professional licensing board or bureau" for his medical use of marijuana.

Plaintiff also argues that the plain language of the statute somehow regulates private employment relationships, restricting the ability of a private employer to discipline an employee for drug use where the employee's use of marijuana is authorized by the state. We find, however, that the statute never expressly refers to employment, nor does it require or imply the inclusion of private employment in its discussion of occupational or professional licensing boards. The statutory language of the MMMA does not support Plaintiff's interpretation that the statute provides protection against disciplinary actions by a business, inasmuch as the statute fails to regulate private employment actions.

We also note that other courts have found that their similar state medical marijuana laws do not regulate private employment actions. *See Johnson v. Columbia Falls Aluminum Co.*, 350 Mont. 562, 2009 WL 865308, at *2 (Mont. 2009) ("The [Medical Marijuana Act] MMA specifically provides that it cannot be construed to

require employers 'to accommodate the medical use of marijuana in any workplace.'") (quoting MCA § 50-46-205(2)(b)); *Roe v. TeleTech Customer Care Mgmt., LLC*, 216 P.3d 1055 (Wash. Ct. App. 2009) ("[I]t is unlikely that voters intended to create such a sweeping change to current employment practices [under the Medical Use of Marijuana Act]."); *Ross v. Ragingwire Telecomms., Inc.,* 174 P.3d 200, 203 (Cal. 2008) ("Nothing in the text or history of the Compassionate Use Act [California's medical marijuana law] suggests the voters intended the measure to address the respective rights and duties of employers and employees.")  Thus, in addition to being unpersuasive on its face, Plaintiff's interpretation of the MMMA, which would proscribe employer terminations of qualified medical marijuana users, is in direct conflict with other states which have passed similar legislation.

### B.        Public Policy Interpretation

For similar reasons, we dismiss Plaintiff's argument that Plaintiff's discharge was contrary to public policy.  The district court held that the MMMA did not regulate private employment but that the statute could potentially provide a defense to criminal prosecution or any other adverse action by the state.  The district court concluded, therefore, that private employees are not protected from disciplinary action as a result of their use of medical marijuana, nor are private employers required to accommodate the use of medical marijuana in the workplace.  In rendering its decision, the district court explained that Michigan voters could not have intended such consequences and that accepting Plaintiff's argument would create a new category of protected employees, which would "mark a radical departure from the general rule of at-will employment in Michigan." *Casias*, 764 F.Supp. 2d at 922.

We agree with the district court that accepting Plaintiff's public policy interpretation could potentially prohibit any Michigan business from issuing any disciplinary action against a qualifying patient who uses marijuana in accordance with the Act. Such a broad extension of Michigan law would be at odds with the reasonable expectation that such a far-reaching revision of Michigan law would be expressly enacted.  Such a broad extension would also run counter to other Michigan statutes that

clearly and expressly impose duties on private employers when the duties imposed fundamentally affect the employment relationship. *See, e.g.*, Michigan Elliott-Civil Rights Act of 1976, Mich. Comp. Laws § 37.2202(1) ("An employers shall not . . . discriminate against an individual with respect to employment . . . "); Persons With Disabilities Civil Rights Act of 1976, Mich. Comp. Laws § 37.1102(1) ("[A]n employer shall not . . . discharge or otherwise discriminate against an individual . . . because of a disability . . . "); and Michigan's Occupational Safety and Health Act, Mich. Comp. Laws § 4008.1002 ("This act shall apply to all places of employment in the state . . . . "). The MMMA does not include any such language nor does it confer this responsibility upon private employers. We therefore reject Plaintiff's policy argument.[1]

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

---

[1] We need not address the issue of whether federal law preempts the MMMA based on our finding that the MMMA does not regulate private employment.

———————

**DISSENT**

———————

KAREN NELSON MOORE, Circuit Judge, dissenting.  Plaintiff Joseph Casias lives in Michigan.  Defendant Troy Estill lives in Michigan.  The parties in this case are not diverse.  In determining that the district court nonetheless had diversity-based subject-matter jurisdiction over this state-law case on the basis of fraudulent joinder, the majority improperly answers an unsettled question of Michigan law, contrary to our caselaw directing us to resolve ambiguities in state law in favor of remand.  Moreover, the majority reaches out to answer this first unsettled question of Michigan law in order to address a second unsettled question of Michigan law.  In so doing, we overstep our bounds as a federal court, and I respectfully dissent.

A defendant is fraudulently joined, and the court may disregard his citizenship for diversity jurisdiction purposes, only if "'it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.'" *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)).  The question is whether "'there is arguably a reasonable basis for predicting'" that the allegedly fraudulently joined defendant could be liable.  *Id.* (quoting *Bobby Jones Garden Apartments*, 391 F.2d at 176); *see also Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (no fraudulent joinder "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants").  Because cases that are in federal court on the basis of diversity jurisdiction involve questions of state law, the values of federalism and comity instruct that a federal court "must resolve 'all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party.'" *Coyne*, 183 F.3d at 493 (quoting *Alexander*, 13 F.3d at 949).  The question of whether "'there is arguably a reasonable basis for predicting'" that a defendant could be liable is not the same as whether such a claim would succeed. *Alexander*, 13 F.3d at 949 (citation omitted).

Here, it is far from clear that there is no "reasonable basis for predicting" that Estill could be liable for wrongful termination under Michigan law. Under Michigan law, "a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation." *Att'y Gen. v. Ankersen*, 385 N.W.2d 658, 673 (Mich. Ct. App. 1986). Michigan courts have simply not addressed the issue of a corporate employee's personal liability in the context of a common-law wrongful-termination claim and thus have not ruled on how such an employee "participates" in a wrongful termination.[1] In the context of a fraudulent-joinder ruling, federal courts are not free to predict how a state court would rule on an unsettled issue of state law; if the state law is unclear as to whether a non-diverse defendant could face liability, the federal court has no subject-matter jurisdiction and must remand the case.

Even applying the standard for agency liability under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), the issue of Estill's liability under the circumstances in this case is not clear. Michigan courts have held that "a supervisor need not have complete authority over hiring, firing, promoting or disciplining" to be personally liable as an employer's agent for discriminatory-employment actions under the ELCRA. *Urbanski v. Sears Roebuck & Co.*, No. 211223, 2000 WL 33421411, at *3 (Mich. Ct. App. May 2, 2000). Estill is the store manager, which certainly suggests some degree of control over personnel decisions; more importantly for present purposes, Wal-Mart has not shown that Estill lacked such control.

Indeed, Estill clearly had authority to terminate Casias, because he was the person who actually fired Casias. *See* R. 1-3 (Estill Decl. at 4) (Page ID #37) ("I was directed . . . to terminate Plaintiff's employment for failing his drug test."). Accordingly, Estill is not like the human resources assistant in *Urbanski* who neither made nor had the authority to make the challenged termination decision. *See* 2000 WL 33421411, at *4.

---

[1]The majority cites two cases for the proposition that "Michigan courts recognize limitations on the ability to attach personal liability to corporate actors." Interestingly, both cases held that the actor involved was personally liable. *See Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210 (Mich. Ct. App. 1989); *Trail Clinic, P.C. v. Bloch*, 319 N.W.2d 638 (Mich. Ct. App. 1982).

Similarly, Estill is not akin to the "receptionist or secretary who typed the termination letter" in the district court's hypothetical. *Casias v. Wal-Mart Stores Inc.*, 764 F. Supp. 2d 914, 920 (W.D. Mich. 2011). A supervisor who fires an employee at the direction of upper management is different from a co-worker who informs the employee of the decision or a secretary who types the termination letter. At the least, Michigan courts have not ruled on whether this distinction is relevant for purposes of establishing liability, and the conclusion that it is relevant is reasonable.

Ultimately, too many questions remain unanswered regarding Estill's role in Casias's termination to conclude that no reasonable possibility exists that Estill could be liable as a participant in the termination. We do not know if Estill informed Wal-Mart of the drug test results or if Estill was told of the results at the same time he was told to fire Casias.[2] We do not know if Estill took any action pursuant to Wal-Mart's directive to fire Casias other than telling Casias that he was fired; we do not know, for example, whether Estill removed Casias from the payroll (or instructed human resources to do so) or performed other tasks implementing the termination decision.[3] These are questions that could be answered in the course of discovery.

It is not clear whether Casias could prove that Estill participated in the allegedly unlawful conduct, but the claim is sufficiently "colorable" to defeat an accusation of fraudulent joinder and to mandate remand to state court. Therefore, I respectfully dissent.

---

[2] Federal district courts in Michigan are divided on whether a supervisor's "informational input" can subject him to liability for an unlawful employment action, *compare Young v. Bailey Corp.*, 913 F. Supp. 547, 551 (E.D. Mich. 1996) (liability), *with Yanakeff v. Signature XV*, 822 F. Supp. 1264, 1266 (E.D. Mich. 1993) (no liability), and the Michigan courts have not addressed the issue.

[3] The district court repeatedly asserts that Estill simply communicated Wal-Mart's termination decision to Casias, but this is not an established fact. As noted above, Estill's own declaration states that Wal-Mart "directed [Estill] to terminate Plaintiff's employment." R. 1-3 (Estill Decl. at 4) (Page ID #37).