**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0080n.06

Nos. 11-3601

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 22, 2013*

DEBORAH S. HUNT, Clerk

KENT STATE UNIVERSITY BOARD OF
TRUSTEES, et al.,

      Plaintiffs - Appellees,

v.

LEXINGTON INSURANCE COMPANY, et al.,

      Defendants - Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

Before: CLAY and STRANCH, Circuit Judges; BELL, District Judge.[*]

**JANE B. STRANCH**, Circuit Judge. Defendant Lexington Insurance Company ("Lexington") appeals an award of $11,072.50 in attorneys' fees issued pursuant to 28 U.S.C. § 1447(c). The award stems from efforts by plaintiffs Kent State University Board of Trustees and Tuscarawas County University Branch District Board of Trustees (collectively, "Kent State") to secure payment from Lexington for an alleged $2.1 million in damages resulting from an early 2009 construction project accident. Kent State brought suit in Ohio state court against Lexington; York Risk Services Group, Inc.; and York employee James P. Sweeney. The defendants removed the action to federal court, alleging that Sweeney had been fraudulently joined in order to destroy the diversity of citizenship among the parties and thereby limit the defendants' right to a federal forum.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

The district court remanded the case to state court and granted Kent State's motion for attorneys' fees. Defendants appealed the award, and we now AFFIRM.

## I. BACKGROUND

Lexington issued an insurance policy to Kent State, effective July 1, 2008 through July 1, 2009 ("Policy"). The Policy specified the claims adjuster to be a York employee, James (Jim) P. Sweeney, and noted that the "assigned may be changed by mutual consent of the Insured and the Company." On March 9, 2009, the structural steel framing of a Kent State construction project collapsed, and Kent State alleges it suffered at least $2.1 million in damages as a result. The Policy required Kent State to report any losses to defendant Sweeney, and Kent State alleges that it advised Sweeney of the damages on or about March 10.

According to their Ohio state court complaint, the plaintiffs heard nothing from the defendants about the claim until they met with Sweeney on December 1, 2009, almost nine months later. Although coverage of the claim had never been challenged and payment had been indicated as forthcoming, in January of 2010 Sweeney issued a reservation of rights letter asserting a possible exclusion of coverage. Lexington later rescinded the letter and made an interim payment of $111,000. No more payments were made, however, and the plaintiffs eventually issued a demand to the defendants to inform them of the claim coverage. On November 1, 2010, Kent State filed suit in Common Pleas Court for Tuscarawas County, Ohio, against Lexington, York, and Sweeney. The suit alleged breach of contract, negligence, bad faith, wanton and reckless conduct, and violation of the duty of good faith and fair dealing.

Defendants timely removed the suit to federal court, alleging that Sweeney, a resident of Ohio, had been fraudulently joined to defeat diversity jurisdiction. They argued that Sweeney was

2

not in privity of contract with the plaintiffs and thus could not be liable to them, and also that he could not be liable as the representative for a disclosed principal. Within a week of the notice of removal, Lexington also filed a motion to dismiss York and Sweeney from the suit; a motion to strike all references to American International Group ("AIG"), the parent corporation of Lexington; and an answer to the original complaint. Kent State filed a memorandum in opposition to the motion to strike, a motion to stay briefing on the motion to dismiss, and a motion to remand the case to Ohio state court. During this time, the parties participated in multiple telephone conference calls with the court, a case management conference, and a mediation conference. Lexington at first filed a response in opposition to the motion to remand, but it eventually withdrew that opposition and stipulated to the remand.

Kent State subsequently filed a motion for attorneys' fees under the federal statute covering removal actions and motions to remand, 28 U.S.C. § 1447(c). The motion requested fees representing the 165.5 attorney hours and 16.5 paralegal hours that the Ohio Attorney General's office had allegedly spent in pursuit of the remand. The motion did not include specific evidence detailing the hourly activities of individual attorneys and paralegals, but did include affidavits from various Assistant Attorneys General testifying to the number of hours each had spent working on the case after the notice of removal had been filed. The motion set the hourly rate at $125 per attorney hour and $65 per paralegal hour, for a total of $21,760. Lexington filed a memorandum in opposition, Kent State filed a reply, and Lexington filed a sur-reply.

The district court granted both the motion to remand and the motion for attorneys' fees. The court determined that the combination of the unsettled state of relevant Ohio agency law and the high bar for fraudulent joinder claims in removal actions left no doubt that the matter should not have

3

been removed. While the court held a fee award was proper under § 1447(c), it stated that the request "should have been further detailed." Nonetheless, after reviewing the specific filings made and individuals involved, noting the low hourly rate, and acknowledging that the Attorney General's office functions differently than a private firm, the court granted a total fee award of $11, 072.50.

Despite this partial victory on the award amount, Lexington appealed the fee award to this court, arguing that (1) the notice of removal was "fairly supportable" as required under Sixth Circuit case law and therefore a fee award is improper, and (2) no fee award is appropriate where the moving party provides insufficient detail to explain the number of hours billed.

## II.  STANDARD OF REVIEW

We review the district court's decision to award attorneys' fees under 28 U.S.C. § 1447(c) for abuse of discretion. *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1059 (6th Cir. 2008) ("District courts have considerable discretion to award or deny costs and attorney fees under 28 U.S.C. § 1447(c)."). An abuse of discretion occurs "where a district court relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* (internal quotation marks omitted). A reviewing court, however, "cannot overturn a district court solely because it would have made a different decision under the circumstances." *Bartholomew v. Town of Collierville*, 409 F.3d 684, 686 (6th Cir. 2005) (quoting *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 556 (6th Cir.1992)).

Where the court "provides a clear and concise explanation of its reasons" we afford the district court "substantial deference" on calculations of the amount of an award. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). This discretion "is appropriate in view of the district

4

court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### III.  DISCUSSION

**A. Fees award standard in removal actions**

Federal law governs when a civil case brought in state court may be removed to federal court and when the district court must remand an action to state court. *See* 28 U.S.C. §§ 1441, 1447(c). An action may be removed only when the plaintiff could have filed suit in federal court in the first place. 28 U.S.C. § 1441. If the district court determines that the removal was improper, the action must be remanded, and the order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* § 1447(c).

The language of the remand statute "places an award of costs and attorney fees . . . squarely within the discretion of the district court, but subject to the guidance set forth by the Supreme Court in *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136–37 (2005)." *Warthman*, 549 F.3d at 1059. In *Martin*, the Supreme Court limited a district court's discretion to award fees, absent unusual circumstances, to those cases where "the removing party lacked an *objectively reasonable* basis for seeking removal." 546 U.S. at 141 (emphasis added). "This court has similarly instructed that an award of costs, including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least *some* finding of fault with the defendant's decision to remove." *Warthman*, 549 F.3d at 1059–60 (quoting *Bartholomew*, 409 F.3d at 687).

In holding that an "objectively reasonable" notice of removal could defeat a request for attorneys' fees, the Supreme Court rejected a line of cases in which a plaintiff was "presumptively"

5

entitled to an award of fees whenever removal was improper. *Martin*, 546 U.S. at 136. According to the Court, "there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.* at 140.

The objective reasonableness standard, however, does not require a showing that the defendant's position was "frivolous" or "without foundation." *Martin*, 546 U.S. at 138–39 (rejecting the formulation applied for defendants' recovery of fees in civil rights cases under 42 U.S.C. § 1988). Among other factors, objective reasonableness may depend on "the clarity of the law at the time the notice of removal was filed." *Lott v. Pfizer*, 492 F.3d 789, 792 (7th Cir. 2007); *see also Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008).

Here, the reasonableness of Lexington's decision to remove Kent State's claim based on a fraudulent joinder theory depended on the clarity of two bodies of law—the Sixth Circuit's standard for fraudulent joinder and Ohio state law on insurance agent liability.

**B. Fraudulent joinder standard**

A civil case is properly removed under §1441(b) where there is complete diversity of the parties at the time of removal, meaning that "all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (quoting *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir.1989)). "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999)).

6

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 492–93 (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). *Coyne* provides the relevant standard:

> [I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

183 F.3d at 493 (6th Cir. 1999) (internal quotation marks and citation omitted). The Eighth Circuit, which also considers whether a state-law claim is "colorable" for the purpose of fraudulent joinder, has concluded that a claim is colorable "if the state law *might* impose liability on the resident defendant under the facts alleged." *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003).

The combination of the "colorable" standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle. A defendant attempting to prove fraudulent joinder thus faces a particularly heavy burden. *See Casias*, 695 F.3d at 433 (applying a test that is "similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss"); *see also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir.2009) ("A defendant faces a 'heavy burden' to demonstrate that the joinder is fraudulent, and some courts . . . have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6)."); *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 574 (5th Cir. 2004) ("The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper."); *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999) ("The party alleging fraudulent joinder bears a heavy burden—it must show

7

that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.").

## C. Combining state law and federal law inquiries

Lexington's core argument for fraudulent joinder was that Sweeney could not be held liable for any of the alleged causes of action because he was acting as an agent for a disclosed principal. Without Sweeney, complete diversity would exist to justify removal. The notice of removal included two citations to support defendants' position on agency law. First, in *Eaton v. Candle Gen. Ins. Co.*, an Ohio federal district court addressed the liability of the corporate agent of an insurance company, and noted that "[t]he well-settled rule in Ohio is that an agent who contracts with a third party on behalf of a disclosed principal, and as the authorized agent of that principal, is not personally liable on the contract." 147 F. Supp. 2d 829, 837 (N.D. Ohio 2001), *aff'd on other grounds*, 59 F. App'x 719 (6th Cir. 2003). Second, in *James G. Smith & Assocs., Inc. v. Everett*, an Ohio state appeals panel noted that "[a]n agent who acts for a disclosed principal and who acts within the scope of his authority and in the name of the principal is ordinarily not liable on the contracts he makes." 439 N.E.2d 932, 935 (Ohio Ct. App. 1981).

The district court, however, recognized that there was "a gray area in Ohio law surrounding the liability of an agent of a disclosed insurer," and cited two more recent Ohio federal district courts cases, *Technology Strategies Inc. v. Transcontinental Ins. Co.*, No. 5:03VC2439 (N.D. Ohio Feb. 9, 2004), and *Wiseman v. Universal Underwriters Ins. Co.*, 412 F. Supp. 2d 801 (S.D. Ohio 2005). Both involved removal actions where the defendant alleged fraudulent joinder of agents of disclosed insurer-principals. In *Technology Strategies*, an unpublished decision, the court denied the motion to remand on the basis that the individual agents did not fit within any exception to the general rule

and they had been fraudulently joined. In *Wiseman*, a decision published a year later, the court engaged in an exhaustive review of Ohio agency and tort law, found "a reasonable basis in Ohio law for concluding that Ohio courts may recognize a claim based on negligence or wanton and reckless conduct on the part of [the insurance agent defendant] as the claims adjuster in this case," 412 F. Supp. 2d at 805, and granted the motion to remand.

In granting the fee award here, the district court recognized that the Supreme Court's decision in *Martin* and the "objectively reasonable" standard govern. The court, however, noted that none of the Ohio state law cases cited "compel a certain result" as to Sweeney's liability. It reasoned:

> Given the unsettled nature of Ohio law on this issue and the *Coyne* standard, remand was a foregone conclusion. Moreover, as the Defendants were well aware of the standard for fraudulent joinder—requiring any ambiguity in controlling law to be resolved in favor of the non-removing party— they could not have had an objective basis for removing this matter. In summary, armed with the knowledge that any doubt about the propriety of removal would be resolved in favor of remand, Defendants could not have believe that removal was appropriate.

*Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, No. 5:10CV2714, 2011 WL 1578505, at *2 (N.D. Ohio Apr. 26, 2011).

Lexington challenges this standard as an incorrect statement of the law. It argues that the "unsettled" nature of the law—the fact that there is "no on-point case to support" Lexington's position—cannot alone form the basis for a fee award under § 1447(c) and *Martin*. The district court's application of the law, Lexington argues, would discourage litigants from seeking to extend existing law for fear of an adverse attorney award—a result in violation of *Martin's* admonition that such awards should not discourage the exercise of the right to removal "in all but obvious cases." 546 U.S. at 140.

9

We agree that the unsettled state of the law cannot, alone, provide the basis for a fee award under *Martin*. In analyzing the meaning of a new federal statute that controls removal, for example, it must be possible for defendants to develop relevant case law by removing cases in the absence of precedent. *See Lussier*, 518 F.3d at 1066–67 (affirming denial of fees where removal sought under a "new statute whose meaning had not yet been fleshed out"); *Lott*, 492 F.3d at 793 (same). In *Lussier* and *Lott*, the lack of controlling precedent on the meaning of provisions in the Class Action Fairness Act suggested that removal actions were objectively reasonable, even if remand was ultimately appropriate.

Here, however, the precedent governing removal in fraudulent joinder actions is well settled. *Coyne* requires remand where a plaintiff has stated a "colorable" basis for liability, and all disputed questions of fact and any ambiguities in the governing state law are resolved in favor of the party seeking remand. Accordingly, the determination that Ohio law on agent liability is unsettled is not the end of the inquiry. The nature of state-law precedent must be viewed through the lens of *Coyne* to determine whether there is a "colorable" claim. Under this standard, the district court correctly observed that the unsettled nature of *state*-law precedent on the liability of the diverse party is a factor that weighs strongly in favor of a remand.[1]

---

[1]Lexington submits two published district court cases from this Circuit to support its contention that "courts have consistently not imposed fees following remand where the law was unsettled." Appellant's Br. at 14. Both of those cases, however, reflect unsettled federal law—as in *Lussiter* and *Lott*—and not, as here, unsettled state law in the context of the (settled) federal fraudulent joinder standard. In *Schafer Oil Co. v. Anna Petroleum, LLC*, the defendant removed the action based on an argument that equitable tolling should apply to the limitations period in the federal removal statute, 28 U.S.C. § 1446(b). 767 F. Supp. 2d 856, 859 (S.D. Ohio 2010). The argument was supported by precedent from the Fifth Circuit, but not the Sixth. In *Geffen v. General Elec. Co.*, the defendant alleged removal was proper under the fraudulent *mis*joinder doctrine—a theory regarding the severability of factually distinct claims. 575 F. Supp. 2d 865, 868–69 (N.D. Ohio 2008). Unlike the fraudulent joinder doctrine, governed by *Coyne*, the Sixth Circuit had not

We do not mean to suggest that attorney fees will *always* be appropriate in fraudulent joinder cases. There are cases where it is obvious, according to settled state-law precedent, that a particular defendant is not liable, and no fees are appropriate in that case because the remand action itself should be denied. On the other hand, there are cases where according to state-law precedent it is obvious that the defendant may be liable, and in that case a fraudulent joinder claim would be frivolous. In between there is a spectrum of cases. *See* 14C Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice and Procedure* § 3739 (4th ed. 2009) (noting that, interpreting *Martin*, many district courts consider "where the removal seemed to fall on a spectrum running from reasonable to frivolous."). And, *Martin* cautions, removal in some—but not all—of these in-between cases must be considered objectively reasonable.

It is undoubtedly reasonable to remove a case where a plaintiff can provide no precedent at all supporting a theory of liability. It is also reasonable to remove a case where a plaintiff provides such weak authority that it is a "close question" as to whether the plaintiff's failure to state a claim is "obvious according to the settled rules" of the forum state. *Gardner v. UICI*, 508 F.3d 559, 562 (9th Cir. 2007). In a case like *Gardner*, state-law precedent may be so lopsided that, though not "controlling," the weight of authority renders a removal action objectively reasonable and fees inappropriate even though the case is ultimately remanded.[2]

---

adopted the fraudulent misjoinder doctrine. *Id.* In both cases, the district courts declined to adopt and apply unsettled theories of removal power under federal law and declined to grant fees. Neither case, however, suggests that fees are inappropriate in fraudulent joinder cases where *state* law is unsettled and the court must consider whether a claim is "colorable" under the *Coyne* standard.

[2]It may also be reasonable to remove a case where state law is unsettled, but the evidence in the record does not support liability of the nondiverse defendant. *See Casias*, 695 F.3d at 433–34 (resolving ambiguities in state law and upholding removal based on defendant's "limited involvement" in the alleged tortious actions). That does not appear to be the case here, though.

At some location on the spectrum, however, the relevant case law available to a plaintiff rises to the level at which the state-law question is no longer lopsided. At some point, a plaintiff's claim becomes so plainly "colorable" that, once viewed through the lens of the demanding fraudulent joinder standard, remand is no longer a close question. In that situation, it is no longer objectively reasonable for the defendant to attempt removal in the first place. Determining when and where this point is reached is the judgment call that a district court must make when presented with a request for fees pursuant to § 1447(c).

We have no quarrel with the district court's decision in this case. The court supported its conclusion with reference to *Wiseman*, the recent published opinion from another court in this Circuit. *Wiseman* included a robust survey of Ohio case law, concluded that a claim similar to Kent State's was not necessarily foreclosed under Ohio law, and determined that remand was appropriate under the *Coyne* standard. 412 F. Supp. 2d 801. *Wiseman* noted the Ohio Supreme Court's holding that a "breach of the duty to act in good faith will give rise to a cause of action in tort against the insurer irrespective of any liability arising from breach of contract." *Id.* at 804 (citing *Staff Builders, Inc. v. Armstrong*, 525 N.E.2d 783 (Ohio 1998)). And *Wiseman* cited seven different Ohio state court cases from the last three decades stating that individual insurance agents may be held personally liable for various types of tortious conduct related to their occupations. *Id.* at 805–06.

It is true that Lexington was also able to cite relevant case law—highlighting limits on the liability of agents for disclosed principals. Thus, there is no question it would be "objectively reasonable" for it to argue in Ohio state court against the claim Kent State raised as to Sweeney's

---

While Lexington's core claim of factual insufficiency is that Sweeney was not in privity of contract with the plaintiffs, Kent State's claims are not limited to breach of contract.

12

liability. But the propriety of removal presents a different reasonableness inquiry. Measured against the authority in *Wiseman*, Lexington's cases do not approach the point on the spectrum representing a lopsided presentation of legal authority for its position. Viewed through the lens of the *Coyne* fraudulent joinder standard—the standard Lexington knew would be applied by the district court in this case—removal based on the clearly unsettled nature of Ohio state law was not "fairly supportable" or "objectively reasonable."

**D. Appropriate documentation and award amount**

In raising the failure by the Ohio Attorney General's office to provide a detailed accounting of their hours, Lexington does not argue that the award amount was excessive or improperly calculated, but that the district court abused its discretion by awarding *any* fees and costs at all to Kent State. This argument also fails. While we share Lexington's concern about the lack of specificity in Kent State's documentation, the district court properly considered this factor by significantly reducing the final award.

Lexington is correct that a "fee applicant (whether a plaintiff or a defendant) must . . . submit appropriate documentation to meet 'the burden of establishing entitlement to an award.'" *Fox v. Vice*, --- U.S. ----, 131 S. Ct. 2205, 2216 (2011) (quoting *Hensley*, 461 U.S. at 437). By submitting bare affidavits specifying the number of hours each attorney worked on the remand motion, the Ohio Attorney General's office failed to meet this burden.

It is a substantial leap, however, to suggest that the failure to provide appropriate documentation should bar a court from awarding any fees at all. The relevant precedent does not reflect such a harsh rule. Rather, "[w]here the documentation of hours is inadequate, the district

13

court may *reduce* the award accordingly." *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) (quoting *Hensley*, 461 U.S. at 433) (emphasis added).

Lexington directs this court to *Kennecott Corp. v. EPA*, in which the D.C. Circuit noted that "[f]ee applicants bear the heavy obligation to present well-documented claims." 804 F.2d 763, 767 (D.C. Cir. 1986) (internal quotation marks omitted). That case does not, however, support Lexington's argument. In *Kennecott*, the plaintiffs' documentation contained largely "summaries" of monthly work that did not segregate work done for clients on unrelated cases. *Id.* at 766–67. The court did not, however, penalize the plaintiffs by entirely eliminating the fee award. Instead, the court reduced the ultimate award by fifteen percent, noting that a fee award "may be discounted as a result of poor documentation." *Id.* at 767; *see also Hensley*, 461 U.S. at 438 n.13 (noting that the district court had properly reduced the fee award by thirty percent to account for inexperience and failure to keep contemporaneous time records).

While fee awards in civil rights cases provide incentives for attorneys to take on cases they otherwise would not, *see Geier v. Sundquist*, 372 F.3d 784, 789 (6th Cir. 2004), fees are justified under the remand statute because they "reduce[] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin*, 546 U.S. at 140. Thus, even where a plaintiff has failed to provide proper documentation for the requested award, the granting of some fee award—even if significantly reduced—serves the purpose of the statute by deterring improperly sought removals. *Cf. Wikol ex rel. Wikol v. Birmingham Pub. Sch. Bd. of Educ.*, 360 F.3d 604, 611

(6th Cir. 2004) (rejecting "the argument that a plaintiff's bad acts" such as "false and misleading" billings warrant the denial of attorney fees under 42 U.S.C. § 1988).[3]

A trial court has the discretion to consider the goals of the fee statute, along with other factors such as the success of the parties, but the court may abuse its discretion when it does so without a "clear and concise" explanation. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007); *Hensley*, 461 U.S. at 437 ("It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award.").

The district court in this case provided a clear and concise explanation for the fee award and therefore did not abuse its discretion. The court recognized that the Ohio Attorney General had not fully met its burden of providing specific documentation of the reported 165 attorney hours, and the court therefore significantly reduced the fee award—almost in half—from $21,760 to $11,072.50. The court limited reimbursement for unsuccessful arguments and for motions that would likely be resolved in state court, but also acknowledged that it had been able to review the filings on the remand motion and to "personally observe counsel during numerous proceedings." *Kent State*, 2011 WL 1578505, at *4. *Cf. Gonter*, 510 F.3d at 619 ("[C]ourts can easily verify the time lawyers spend at trial and in depositions . . . ."). The court also weighed other equitable considerations, including the fact that the Attorney General's office requested a remarkably low hourly rate of $125 per hour, and the fact that Attorney General's office does not keep records in the same way that attorneys in private practice do.

---

[3]Lexington contends that Ohio state case law interpreting Ohio Rule 1.5 would limit Kent State's recovery in this case. To the extent this is true, however, it does not affect the conclusion that the federal district court has discretion to grant a reduced award under § 1447(c). *Cf. First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002) (holding that Fed. R. Civ. P. 11, not the comparable Ohio rule, governs the award of fees for frivolous conduct).

As the Supreme Court recently held in *Fox*, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox*, 131 S. Ct. at 2216.

> The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."

*Id.* (quoting *Hensley*, 461 U.S. at 437). The district court in this case adequately explained its actions. Faced with the limited information provided by the Ohio Attorney General's office, the court used "estimates in calculating and allocating attorney's time," with the goal of "rough justice." *Fox*, 131 S. Ct. at 2216. We find no abuse of discretion.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

16